STATE of Utah, Plaintiff and Appellee,

v.

Wallace Jack REED, Defendant and Appellant.

No. 900405–CA.

Court of Appeals of Utah.

Oct. 23, 1991.

does not exceed $250;

Martin V. Gravis, Ogden, for defendant and appellant

R. Paul Van Dam and Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, ORME and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Wallace Jack Reed appeals his convictions of burglary, a second degree felony, in violation of Utah Code Ann. § 76–6–202 (1990), and rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1990). We affirm.

### FACTS

We view the facts in the light most favorable to the jury's verdict. *State v. Harper*, 761 P.2d 570, 570 (Utah App.1988).

In the early morning hours of January 21, 1990, Wallace Jack Reed went to D.M.'s home in Ogden, Utah and knocked on the door. D.M., thinking it was her husband returning from work, unchained and opened the door. Reed pushed his way in the door and, after forcing D.M. to lie on the floor, held her down with his forearm across her chest and forced her to have sexual intercourse with him. After Reed left, D.M. called the police and reported the rape. Officers Phillips and McGregor found Reed outside his house and immediately took him into custody. After obtaining Reed's consent, Officer Phillips searched Reed's house. He found drug paraphernalia in open view on the bathroom sink.

At trial, both D.M. and Reed testified that two nights earlier, D.M. had visited Reed's house with two other women, and that D.M. and Reed had known each other for approximately five years. However, the following discrepancies between D.M.'s testimony and Reed's testimony occurred: D.M. testified that she did not talk to Reed on January 19, while Reed testified that D.M. did talk to him and asked him for drugs, to which he replied: "I don't do them drugs." D.M. further testified that when Reed came to her home on January 21, she did not consent to intercourse and that "[Reed] looked like he was on something, like—looking all wild." Reed testified that intercourse was consensual and that he was not intoxicated. Additionally, Reed and two others who were in Reed's house at the time of his arrest all denied use of drugs.

On cross-examination, over Reed's objection, the trial court allowed the State to question Reed about the drug parapherna-

lia which was found in his house.[1] The trial court ruled that Reed opened the door to the issue of drugs when he testified as to D.M.'s inquiry about drugs and his reply to her that he did not use drugs, and that this line of questioning went to the issue of Reed's credibility. The trial court also allowed the State to question Officer Phillips as to the drug paraphernalia found in Reed's house. The jury subsequently convicted Reed of burglary and rape.

The following issue is raised on appeal: Did the trial court err in allowing the State to question Reed and Officer Phillips about the drug paraphernalia found in Reed's house?

## STANDARD OF REVIEW

Whether testimony is admissible is a question of law, which we review under a correctness standard, incorporating a "clearly erroneous" standard for the review of subsidiary factual determinations. *State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991).

## ANALYSIS

Reed asserts that the testimony concerning drug paraphernalia was irrelevant and therefore inadmissible. The State responds that the trial court properly admitted this testimony under Utah Rule of Evidence 608, arguing that since Reed introduced the issue of drugs when he testified on direct examination, the trial court properly permitted the State to impeach Reed's credibility by questioning him and Officer Phillips about the drug paraphernalia. Reed replies that even if the testimony were admissible under Rule 608, the probative value of the testimony was outweighed by its prejudicial effect, and thus, such evidence was nonetheless inadmissible under Utah Rule of Evidence 403.

Rule 608(b) provides, in relevant part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness

. . . .

In accordance with Rule 608, Utah courts have consistently held that impeachment evidence is admissible if it goes to credibility, even though it introduces evidence which would be otherwise inadmissible. *State v. Tucker*, 800 P.2d 819, 824 (Utah App.1990) (citing *State v. Lopez*, 626 P.2d 483, 486 (Utah 1981); *State v. Wells*, 603 P.2d 810, 812 (Utah 1979); and *State v. Green*, 578 P.2d 512, 514 (Utah 1978)).

In the case at bar, credibility was a crucial issue for three reasons. First, Reed's testimony was in direct contradiction to D.M.'s account: Reed claimed that intercourse was consensual, while D.M. testified that she did not consent; Reed asserted that he was not intoxicated, whereas D.M. said that Reed appeared intoxicated; and Reed testified on direct examination that D.M. had asked him for drugs, to which he responded, "I don't do them drugs." In so testifying, Reed contradicted D.M.'s testimony and made the issue of credibility a central issue for the jury to consider in reaching its verdict.

Secondly, Reed's testimony also attacked D.M.'s character, while presenting himself in a favorable light. In such circumstances, the State must be allowed to attack a defendant's credibility as well as to defend the credibility of its own witness, in this case, by impeaching the testimony of Reed. Thirdly, Reed and the two others who were at Reed's house at the time of his arrest all denied the use of drugs. By way of impeachment, the jury was entitled to know that at least one of them was lying, and inquiring into the presence of drug paraphernalia in Reed's house was the only way to do so.

---

1. In so doing, the trial court reversed an earlier ruling made in chambers that such inquiry would not be allowed. However, that ruling was made prior to Reed testifying that D.M. asked him for drugs and that he told her that he did not use drugs.

Although Reed's testimony concerning the drug paraphernalia would not be admissible solely to disgrace him or to show his propensity to commit a crime, "[s]ince the evidence was introduced to impeach the defendant's credibility, it was admissible for that limited purpose even though it [was otherwise inadmissible]." *Tucker*, 800 P.2d at 824 (quoting *State v. Wells*, 603 P.2d 810, 812 (Utah 1979)). Here, this is precisely the reason that the State questioned Reed about the drug paraphernalia, and therefore, the trial court did not err in admitting the testimony.

■ Similarly, Officer Phillips's testimony was admissible to impeach defendant's statement that he did not use drugs. In *State v. Green*, 578 P.2d 512 (Utah 1978), the Utah Supreme Court held that in addition to impeaching a defendant on cross-examination, the State may also introduce on rebuttal any testimony or evidence "which would tend to contradict, explain or cast doubt upon the credibility of [a defendant's] testimony." *Id.* at 514 (citations omitted). Since Officer Phillips's testimony went to the issue of Reed's credibility, it was admissible for that limited purpose.[2]

Having determined that Reed's and Officer Phillips's testimony was admissible, we next address Reed's claim that it should have nonetheless been excluded under Utah Rule of Evidence 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...."

Under the circumstances of this case, we find Reed's claim to be without merit. It would be a mockery of our justice system to allow a defendant to take the stand and testify as to his own good character while impugning the character of an opposing witness, and then claim that his testimony is not subject to cross-examination because such inquiry would be too prejudicial. Accordingly, we refuse to allow Reed to do so in this case.

## CONCLUSION

It was not error for the trial court to admit Reed's testimony and Officer Phillips's testimony as to drug paraphernalia found in Reed's house. Reed's conviction is therefore affirmed.

BILLINGS and ORME, JJ., concur.

---

2. Moreover, even if we were to determine that the trial court erred in admitting Officer Phillips's testimony, such error was harmless. Error is harmless when it is "sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the trial." *State v. Verde*, 770 P.2d 116, 120 (Utah 1989) (citations omitted). Such error does not "prejudice the defendant and, on appeal, is disregarded whether or not an objection was made at trial." *Id.* at 121 n. 10 (quoting Wright, *Federal Practice and Procedure: Criminal 2d* §§ 851 to 856 (1982)). In the case at bar, D.M.'s testimony provided ample evidence to support conviction, and omission of Officer Phillips's testimony would not have likely resulted in a different outcome. Furthermore, Reed presents no evidence to show that the jury would have ruled differently absent Officer Phillips's testimony. Thus, the admission of Officer Phillips's testimony was, at best, harmless error.