STATE of Utah, Plaintiff and Appellee,

v.

Richard M. MARTINEZ, Defendant and Appellant.

No. 920239–CA.

Court of Appeals of Utah.

Feb. 25, 1993.

Jay D. Edmonds, Salt Lake City, for defendant and appellant.

Jan Graham, Todd A. Utzinger, and J. Frederic Voros, Jr., Salt Lake City, for plaintiff and appellee.

## OPINION

Before BILLINGS, GREENWOOD and RUSSON, JJ.

BILLINGS, Presiding Judge:

Defendant was charged with two counts of distributing a controlled substance (cocaine), a second degree felony, in violation of Utah Code Ann. § 58–37–8 (1990).

Defendant's pretrial motion to dismiss on the ground of entrapment was denied by the trial court after an evidentiary hearing. Defendant did not testify at the jury trial that followed, but through counsel admitted selling cocaine to the undercover police officer and relied solely on his entrapment defense. A jury found defendant not guilty on Count I and guilty on Count II. We affirm.

In November 1990, Anne Burchett (Burchett) worked as an undercover officer for the Iron/Beaver County Narcotics Task Force in Cedar City. Burchett worked as a bartender as part of her cover. A mutual friend introduced defendant and Burchett in a lounge at the Holiday Inn in Cedar City. Burchett and defendant engaged in small talk at the lounge and discussed having dinner at defendant's house. Several weeks later defendant cooked dinner for Burchett at his house. After dinner defendant asked Burchett if she "did coke" and she responded "occasionally." In their conversation Burchett also mentioned she had some firewood at her house that needed chopping.

Several weeks after this initial dinner, defendant stopped by Burchett's trailer to chop firewood. Burchett made coffee and invited him inside after he chopped the firewood. As defendant was leaving he attempted to kiss Burchett.

At the end of December 1990, defendant took Burchett out for a drive around Cedar City to look at the Christmas lights.

On May 8, 1991, defendant invited Burchett to his home after work. After some conversation in the kitchen, Burchett told defendant that as a bartender she knew a lot of people looking for cocaine. Defendant said he would get some for her.

On May 10, 1991, Burchett and defendant drove together to Las Vegas, Nevada, to buy cocaine. Defendant loaned Burchett the $350 for the purchase of this quarter ounce of cocaine because she told him she did not have the money to buy the drugs. Burchett then repaid defendant the $350 with money she obtained from the Iron/Beaver County Drug Task Force. When they arrived in Las Vegas defendant made a phone call. Defendant told Burchett they needed to go to the King's 8 Casino. Once there, defendant and Burchett gambled until they were approached by a man. Defendant then left with the man to conduct the transaction. While driving back to Cedar City defendant used some of the cocaine and Burchett pretended to do so. Defendant kept a gram of the cocaine as his share.

Back at Burchett's trailer, defendant showed Burchett how to cut the cocaine to increase the amount she would have to sell. They then divided it, cut it, and packaged it. This transaction was the subject of the count on which defendant was acquitted.

In early July 1991, defendant and Burchett went to dinner in Mesquite, Nevada. Later in July, Burchett and defendant met by happenstance. Defendant asked Burchett if she wanted more cocaine to sell. She said she would see if she could find some more customers and asked defendant to contact her later. After checking with her supervisor, Burchett called defendant back on July 26, 1991. Defendant told Burchett the price would be $750 for half of an ounce of cocaine. Defendant then told Burchett to meet him at the Playhouse bar in Cedar City later that night. When they met defendant did not have the cocaine. The next day Burchett went to defendant's house and inquired about the deal. Defendant called his contact and left a message on the contact's answering machine. Burchett told defendant to contact her when he had arranged the deal.

Defendant later called Burchett and asked if she still wanted the cocaine. Defendant wanted to go to Las Vegas within the hour and pick up the drugs. Burchett said she would check on it. Burchett consulted with the Iron/Beaver County Drug Task Force and they decided that she should not go to Las Vegas with defendant. Burchett then told defendant her parents had been in a car accident in northern Utah and that she could not go with him. Defendant told her he still planned to go to Las Vegas. Burchett then went to defendant's house and dropped off the $750. On July 29, 1991, defendant phoned Burchett telling

her he had picked up the cocaine in Las Vegas and made arrangements for her to get the cocaine. This transaction was the subject of the count on which defendant was convicted.

Defendant appeals from this conviction, claiming the trial judge improperly excluded the testimony of a defense witness and that the jury improperly convicted him of distributing cocaine because he was entrapped by Burchett.

## I. ADMISSIBILITY OF EVIDENCE

■ Defendant claims the trial court committed reversible error by excluding the testimony of defense witness Jeff Farr. During the course of Burchett's testimony, the following exchange with defense counsel occurred:

Q: [by defense counsel] Now, during the time that you knew [defendant], did you ever tell him you were a drug user?

A: [Burchett] Yes.

Q: And that was true? Or was it not true?

A: No.

Q: It was not true?

A: Correct. ·

Defense counsel proffered that Jeff Farr would testify he knew Burchett during the time she was working the Martinez case, that the two of them used cocaine and marijuana together, and that he observed Burchett "to be under the influence of drugs in a manner that was impossible and inconsistent with her having only simulated the use of drugs." The prosecutor objected under Rule 608(b) of the Utah Rules of Evidence.

The trial court excluded the testimony under Rule 608(b) as an attempt to attack the credibility of a witness by extrinsic evidence of specific instances of conduct. The court further ruled that the testimony's prejudicial effect outweighed its probative value.

"Whether testimony is admissible is a question of law, which we review under a correctness standard, incorporating a 'clearly erroneous' standard for the review of subsidiary factual determinations."

*State v. Reed*, 820 P.2d 479, 481 (Utah App.1991) (citing *State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991)).

Rule 608(b) provides in relevant part: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility ... may not be proved by extrinsic evidence." Utah R.Evid. 608(b). Farr's testimony falls squarely within this rule and was properly excluded. Farr was prepared to testify he had observed Burchett use drugs and under the influence of illegal drugs on occasions during the period of her investigation of defendant. In the course of Burchett's examination she denied using illegal drugs during her investigation of defendant. Farr's testimony would have been extrinsic evidence of specific instances of Burchett's conduct for the purpose of attacking her credibility, which is exactly what Rule 608(b) was designed to exclude.

In *United States v. Phillips*, 888 F.2d 38 (6th Cir.1989), the court applied Federal Rule 608(b), which is identical to Utah's Rule 608(b), to a substantially similar situation. In *Phillips*, the defendant appealed his jury conviction for the unlawful distribution of cocaine. The defendant claimed that testimony by a defense witness regarding the drug use of the undercover agents in the case was improperly excluded under Federal Rule 608(b). Defense counsel was particularly interested in whether the agents had used cocaine at a certain party during the time of their investigation. Both agents admitted there was cocaine passed around at the party but both denied having used cocaine at the party. After the agents' testimony and cross-examination, the defense proffered that two witnesses would testify they observed the agents using cocaine at the party. The trial court sustained the government's objection and excluded the testimony under Rule 608(b).

The Sixth Circuit found the testimony was properly excluded.

The record shows that the party ... was in no way connected to the drug deal defendant was charged with. If the proffered testimony was taken as true, it would not increase or decrease the proba-

bility that defendant sold the drugs or that he was entrapped. The only consequence of the testimony would have been to create a swearing contest about a matter which, in the words of the trial judge, was "far removed from this case." Thus, we conclude that the evidence was properly excluded unless it was relevant for some purpose other than contradicting the testimonies of [the undercover agents].

*Id.* at 41.

Defendant attempts to use *State v. Reed,* 820 P.2d 479 (Utah App.1991), to buttress his argument that the testimony should not have been excluded. In *Reed,* the defendant appealed his jury conviction for burglary and rape. The victim testified the defendant "looked like he was on something" during the perpetration of the crime. *Id.* at 480. The defendant testified he was not intoxicated at the time. The trial court ruled that "Reed opened the door to the issue of drugs" and accordingly allowed the state to cross-examine him about drug paraphernalia the police found in his home. *Id.* at 481. In *Reed,* the

defendant's credibility was the central issue because the victim and the defendant's testimony were in direct conflict.

■ Defendant's reliance on *Reed* is misplaced. The crucial evidence in *Reed* was simply physical evidence which established that at least one of the defense witnesses was lying. The evidence in *Reed* was not, as it is here, extrinsic evidence of a specific instance of a witness's conduct which attacked his credibility.[1] Furthermore, the *Reed* court provided an alternative ground for affirming the evidentiary ruling, stating that even if allowing the testimony of the police officer concerning the drug paraphernalia was error, it was harmless. *Id.* at 482 n. 2.

Whether Burchett had used drugs while with Farr did not affect defendant's claim of entrapment but only interjected an irrelevant issue.[2] We therefore conclude the trial court properly excluded the testimony of Farr.

## II. ENTRAPMENT

■ On appeal defendant attacks the jury's verdict, which rejected his entrap-

---

**1.** Even if we had determined the testimony of Farr was improperly excluded under Rule 608(b), we would affirm the trial court's refusal to allow Farr to testify by affirming the court's Rule 403 analysis.

Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Utah R.Evid. 403. A ruling under Rule 403 where the trial court expressly weighed the testimony will only be overturned if we determine as a matter of law the trial court's decision was unreasonable. *State v. Hamilton,* 827 P.2d 232, 239–40 (Utah 1992); *State v. O'Neil,* 848 P.2d 694, 699 n. 5 (Utah App.1993).

In the case at hand, the trial court found that the prejudicial effect of Farr's testimony substantially outweighed the probative value. The court stated that Burchett's possible drug use with a third party would have no relationship to her ability, willingness, or motive to tell the truth in this case; Burchett's version of the facts was entirely unchallenged, defendant was simply asking the jury to conclude that those facts constituted entrapment; and any motive to fabricate would have arisen in relation to her conduct with Farr, not Martinez. We agree with the trial court's balancing and cannot say the court's balancing was unreasonable.

**2.** Defendant for the first time on appeal claims the trial court's exclusion of Farr's testimony

violated article I, § 7 of the Utah Constitution, denying him his day in court and further, that article I, § 12 of the Utah Constitution was violated because he was denied "compulsory process to compel the attendance of witnesses in his own behalf." Utah Const. art. I, § 12. "Generally, a defendant who fails to bring an issue before the trial court is barred from asserting it initially on appeal." *State v. Archambeau,* 820 P.2d 920, 922 (Utah App.1991). *See also State v. Mirquet,* 844 P.2d 995 (Utah App. 1992). Defendant has not argued plain error or exceptional circumstances, the only recognized exceptions to this rule. *See Archambeau,* 820 P.2d at 926. We therefore refuse to consider defendant's constitutional claims for the first time on appeal.

Defendant also claims that even if Farr's testimony is not admissible as impeachment evidence under Rule 608(b) then it should have been admissible as relevant under the entrapment defense because the testimony would have shown government misconduct. The trial judge found Farr's testimony to be not relevant and substantially more prejudicial than probative. The trial judge also found the proffered testimony would likely confuse the jury. We agree with the trial court. The fact that Burchett may have used drugs while working on another case is irrelevant to defendant's entrapment defense.

ment defense. We therefore view the evidence and all reasonable inferences drawn from it in a light most favorable to the verdict of guilt. *State v. Moore,* 782 P.2d 497, 501 (Utah 1989); *see also State v. Johnson,* 821 P.2d 1150, 1153 (Utah 1991). We will affirm the defendant's conviction unless the evidence shows beyond a reasonable doubt that defendant was entrapped. *State v. Udell,* 728 P.2d 131, 133 (Utah 1986). Put another way, only "if reasonable minds acting fairly on the evidence should necessarily have a reasonable doubt as to defendant's guilt, [is he] entitled to an acquittal." *State v. Kourbelas,* 621 P.2d 1238, 1240 (Utah 1980).

Defendant contends the evidence establishes an entrapment defense as a matter of law. In defining entrapment Utah Code Ann. § 76–2–303(1) (1990) states:

> It is a defense that the actor was entrapped into committing the offense. Entrapment occurs when a law enforcement officer or a person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Section 76–2–303 rejects the previously applied subjective standard of entrapment and focuses on the government's conduct. *State v. Taylor,* 599 P.2d 496, 499–500 (Utah 1979); *State v. Wright,* 744 P.2d 315, 317 (Utah App.1987). If the police conduct would create a substantial risk that a normal law-abiding person would be induced to commit a crime, entrapment has occurred regardless of the predisposition of the defendant. *Id.* at 318. *See also Moore,* 782 P.2d at 501; *Udell,* 728 P.2d at 133.

Although the facts of each entrapment case must be judged on their own, the Utah Supreme Court has provided guidance by delineating circumstances that may be relevant:

> "Extreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money are examples, depending on an evaluation of the circumstances in each case, of what might constitute prohibited police conduct. In evaluating the course of conduct between the government representative and the defendant, the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person."

*Wright,* 744 P.2d at 318 (quoting *Taylor,* 599 P.2d at 503). Other police conduct condemned by the Utah Supreme Court includes personalized high-pressure tactics, and appeals to extreme vulnerability. *See id.* (citing *State v. Martin,* 713 P.2d 60, 62 (Utah 1986)).

Defendant claims two cases in which the Utah Supreme Court found entrapment require our reversal of his conviction. The cases which defendant relies upon turn on the personal relationship between the defendant and the undercover agent.

In the first case defendant relies on, *Taylor,* the defendant and the undercover agent had lived together, and had a sexual relationship at a time when they were both heroin addicts. After they stopped living together, they remained friends. The undercover agent slept with the defendant during the time he was being investigated. The defendant had strong feelings for the agent and told her he loved her. In requesting the heroin, the agent told Taylor she was suffering from heroin withdrawal, which the supreme court concluded was appealing to Taylor's "sympathy, his pity, and his close personal relationship." *Taylor,* 599 P.2d at 504. The court held the defendant was entrapped because the methods used by the undercover officer created a "substantial risk that the offense would be committed by one not otherwise ready to commit it." *Id.*

In the second case defendant relies on, *State v. Kaufman*, 734 P.2d 465 (Utah 1987), the defendant and his wife owned a store where they sold pawned jewelry. As part of an undercover "sting" operation, an attractive undercover female officer visited the store several times over the course of several months to sell some jewelry. The defendant and she talked extensively during these visits. The officer portrayed herself as a young divorcee with six young children, who was suffering financial difficulty. The defendant offered her a loan several times. The agent later told defendant the jewelry was stolen. The defendant was apprehensive about purchasing the jewelry. He was charged with two counts of receiving stolen property. In affirming the trial court's ruling that the defendant had been entrapped, the court noted the officer was not just selling jewelry but was selling herself as a young, attractive divorcee who needed financial help. *Id.* at 468. Thus, it held "the offenses committed were not the product of the defendant's initiative or desire, but were induced by the conduct of the undercover officer." *Id.*

The State responds that the facts of this case are more consistent with the cases where personal relationships with state undercover agents were not found to be entrapment. For example, in *Moore*, the evidence presented showed that the defendant and the confidential informant were friends. *Moore*, 782 P.2d at 501. They had mutual friends and had met at local bars. Defendant claimed that he had helped the confidential agent withdraw from his drug addiction. The State's evidence showed that the informant had been to the defendant's home six or seven times and had spent the night at defendant's home during a drug party. Because there were no pleas of desperation, appeals based primarily on sympathy or close friendship, or any offers of inordinate sums of money, the Utah Supreme Court concluded that their friendship alone did not constitute entrapment. *Id.*

Similarly, in *State v. Wynia*, 754 P.2d 667 (Utah App.), *cert. denied*, 765 P.2d 1278 (Utah 1988), the defendant and the undercover officers met at a bowling alley and discussed "partying." The officers purchased drinks for the defendant. They initiated conversations about purchasing drugs and bought drugs from the defendant later that night. We noted the facts established only a casual social contact and no evidence of badgering. Neither undercover officer made sexual advances and there were no pleas or high-pressure tactics. *Id.* at 670.

We agree with the State. The primary flaw with defendant's entrapment argument is he focuses almost entirely on the facts preceding and surrounding the first drug transaction on May 10, 1991. Except for the final purchase in May, all events such as the dinner at defendant's house, the wood chopping incident, the kiss, and the drive to look at the Christmas lights all occurred in November or December of 1990 more than six months prior to the second sale for which defendant was convicted. The contacts surrounding the second transaction are limited to one social dinner and one accidental meeting where defendant, not Burchett, proposed a second drug deal.

 Defendant claims these early contacts are relevant because by the time of the second drug deal defendant and Burchett had "established a close personal relationship." However, even if this were true, the mere existence of a personal relationship does not establish entrapment. *Moore*, 782 P.2d at 501. Entrapment requires some exploitation of the personal relationship. The second drug deal occurred at the defendant's suggestion, after a chance meeting, not as a result of "appeals based primarily on sympathy, pity, or close personal friendship or offers of inordinate sums of money." *Taylor*, 599 P.2d at 503. Defendant simply does not establish the threshold requirement of inducement. When the facts are viewed in a light most favorable to the jury's verdict there is not any reasonable doubt as to defendant's guilt.

### III. CONCLUSION

The trial court properly excluded the testimony of Farr and the police conduct here

did not constitute entrapment. We therefore affirm defendant's conviction.

GREENWOOD and RUSSON, JJ., concur.