**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael R. LeVASSEUR, Defendant and Appellant.**

**No. 920444–CA.**

Court of Appeals of Utah.

June 3, 1993.

Jay D. Edmonds, Salt Lake City, for defendant and appellant.

Jan Graham and Todd A. Utzinger, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant Michael R. LeVasseur appeals a jury verdict finding him guilty of cocaine distribution. We affirm.

■ Because LeVasseur challenges a jury verdict, we view the evidence and all reasonable inferences drawn from it in a light most favorable to the verdict. *State v. Martinez*, 848 P.2d 702, 705–06 (Utah App.1993).

In November 1990, Anne Burchett, an undercover police officer working for the Iron/Beaver County Narcotics Task Force, met LeVasseur at the Playhouse Bar in Cedar City, where he worked. In May 1991, she again met him at the bar and struck up a conversation. Later, he asked her out for a dinner date.

LeVasseur believed Burchett was dating only him. She visited LeVasseur at the bar two or three times a week, sometimes bringing him a homemade dinner. They went for a motorcycle ride together, to a movie and to lunch. They went together to a party at a friend's cabin at Panguitch Lake. After drinking and playing strip poker until two or three in the morning, Burchett and LeVasseur spent the night together. The two slept in the same bed, kissed, but did not have intercourse. Burchett persuaded LeVasseur not to have sex with her by explaining that she had recently divorced and did not want to be perceived as a tramp.

Burchett had told LeVasseur that she was a cocaine user. On at least one occasion, she feigned using cocaine in his presence.

On May 24, 1991, she went to the bar to see LeVasseur. Levasseur pointed to his nose, inhaled, and said, "Do you want some?" Burchett understood him to be offering her cocaine. She accepted the offer. LeVasseur handed her a folded dollar bill, which she took to the restroom. There, she unfolded the bill, removed a part of the small quantity of cocaine therein, and returned the bill with the remaining cocaine to LeVasseur. Later, after LeVasseur learned she had not used all the cocaine, he again handed her the bill. She again went to the restroom, removed the rest of the cocaine, and returned the empty bill to LeVasseur.

During May and June 1991, Burchett and LeVasseur continued their romantic relationship. She visited him often at the bar, frequently taking him meals that she had prepared. She invited him to her home for dinner. LeVasseur and his brother went to her house to fix her porch and mow her lawn. She thanked LeVasseur by sending him flowers. He sometimes drove her car and his brother drove her truck. Burchett also developed a friendship with LeVasseur's mother, accompanying her to a movie and, on one or two occasions, taking her dinner at her place of work.

During June 1991, LeVasseur visited Burchett at Brian Head, where she worked as a cocktail waitress. She invited LeVass-

eur to stay with her that night in a hotel room rented to Jeff Farr, who also worked at Brian Head. LeVasseur took a friend home, then went to Burchett's hotel room, where she greeted him at the door wearing only a long shirt and panties. They again slept in the same bed, but did not have intercourse.

On June 20, 1991, Burchett again visited LeVasseur at the bar. He again offered her a small amount of cocaine. Again, she took the cocaine into the restroom and removed a small sample, later turning it in as evidence.

After this, LeVasseur heard little from Burchett. On August 28, 1992, she phoned him, telling him they "had to talk." By this time, LeVasseur had learned Burchett was an undercover officer. Nevertheless, he agreed to meet her. She never came.

LeVasseur was charged with and tried for two counts of distribution of cocaine in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (Supp.1992). The court, after conducting an evidentiary hearing, denied LeVasseur's pretrial motion to suppress, holding as a matter of law that he had not been entrapped, and reserving final determination of the issue for the jury. The matter was then tried before a jury.

During the trial, on cross examination, Burchett testified that she never used illegal drugs while working undercover in Iron County. The defense proffered the testimony of Jeff Farr, who was prepared to testify that Burchett used cocaine and marijuana on several occasions during the relevant time. Although the prosecutor did not object to this proffer, the court, sua sponte, ruled that Utah Rule of Evidence 608(b) rendered the evidence inadmissible.

The jury was unable to reach a verdict on Count I (the June incident), but found LeVasseur guilty on Count II (the May incident). He appeals.

## I. ADMISSIBILITY OF EVIDENCE

LeVasseur claims the court erred in excluding evidence that Burchett had used cocaine and marijuana on several occasions during the relevant time.

■ The Utah Supreme Court recently noted that the standard for reviewing a trial court's ruling on the admissibility of evidence turns on whether the ruling was "one determining the facts to which the law will be applied [or one] applying the law to the determined facts." *State v. Thurman*, 846 P.2d 1256, 1270 n. 11 (Utah 1993).

■ Here, the parties do not dispute the content of the proffered evidence. Instead, the dispute involves applying the law to the facts. We review this matter of law for correctness. *Id.; accord State v. Martinez*, 848 P.2d 702, 704 (Utah App.1993).

■ Rule 608(b) provides: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence." *Martinez* held, in a nearly identical factual situation involving the same principals, Burchett and Farr, that "Farr's testimony would have been extrinsic evidence of specific instances of Burchett's conduct for the purpose of attacking her credibility, which was exactly what Rule 608(b) was designed to exclude." *Id.; accord United States v. Phillips*, 888 F.2d 38, 41 (6th Cir.1989).

We agree. Evidence of Burchett's drug use would not affect LeVasseur's claim. The evidence would serve only to interject an irrelevant issue. *Id.* at 705. Thus, the trial court properly applied Rule 608(b) by excluding Farr's testimony.

## II. ENTRAPMENT

■ LeVasseur also claims the verdict was erroneous as a matter of law because Burchett entrapped him. Because LeVasseur seeks to overturn a jury's verdict, we use a high standard of review: We affirm the conviction unless reasonable minds, acting fairly on the evidence, have a reasonable doubt that LeVasseur was entrapped. *State v. Martinez*, 848 P.2d 702, 706 (Utah App.1993). "Entrapment occurs when a law enforcement officer ... induces the commission of an offense ... by methods creating a substantial risk that the offense would be committed by one not otherwise

ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." Utah Code Ann. § 76-2-303(1) (1990). In other words, "[i]f the police conduct would create a substantial risk that a normal law-abiding person would be induced to commit a crime, entrapment has occurred regardless of the predisposition of the defendant." *Martinez*, 848 P.2d at 706.

In *State v. Taylor*, 599 P.2d 496 (Utah 1979), the Utah Supreme Court provided further guidance for determining whether entrapment has occurred:

> Extreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money, are examples, depending on an evaluation of the circumstances in each case, of what might constitute prohibited police conduct. In evaluating the course of conduct between the government representative and the defendant, the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person.

*Id.* at 503.

The "mere existence of a personal relationship does not establish entrapment." *Martinez*, 848 P.2d at 707 (citing *State v. Moore*, 782 P.2d 497, 501 (Utah 1989)).

■ Here, although the State, through Burchett, exploited the close personal relationship she had with LeVasseur, Burchett never appealed to LeVasseur for drugs based on his feelings for her.[1] In fact, she neither requested cocaine nor induced the offer. Rather, LeVasseur spontaneously offered her cocaine. Because the evidence shows no nexus between the personal rela-

tionship and the offer of cocaine, we conclude there is no basis for reversal.

Affirmed.

BILLINGS, J., concurs.

ORME, J., concurs, except that as to Section I, he concurs only in the result.

---

1. While we conclude that the State's tactics did not legally constitute entrapment, we are concerned regarding the lengths the State is willing to go in apprehending drug users. By employing such immoral and unethical tactics the State places itself on the same level as the offender. The end, fighting the war on drugs, does not justify such extreme means.