**STATE of Utah, Plaintiff and Appellee,**

**v.**

**Donald Hyland KEITZ, Defendant and Appellant.**

**No. 920558–CA.**

Court of Appeals of Utah.

June 30, 1993.

**686**

G. Fred Metos (argued), Salt Lake City, for defendant and appellant.

Jan Graham, State Atty. Gen. and J. Kevin Murphy, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS and JACKSON, JJ., and RUSSON, Associate P.J.

RUSSON, Associate Presiding Judge:

Donald Hyland Keitz appeals his conviction of unlawful possession of a controlled substance with intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1) (Supp.1992). We affirm.

## FACTS

In late 1990, Keitz met Annie Beckstead at the Brian Head Lodge, where she worked as a cocktail waitress. Unbeknownst to Keitz, Annie Beckstead was actually Annie Burchett, an undercover police officer whose assignment included befriending drug users and dealers in the Brian Head, Utah, area.

As part of her cover, Officer Burchett made herself known as a drug user, negotiating drug purchases and occasionally feigning drug use. In so doing, Burchett became "friendly" with Keitz and other customers that frequented the Brian Head Lodge. Burchett would occasionally massage Keitz's shoulders at the lodge, and accompanied Keitz on his motorcycle on at least two occasions. Keitz also testified

that on one such ride, Burchett lifted her blouse and exposed her bare breasts to oncoming motorists.

In the course of their relationship, Officer Burchett inquired whether Keitz had access to drugs. Keitz responded by asking Burchett to share a marijuana "joint" with him. She accepted his invitation and feigned use of the drug. Burchett also told Keitz that she was interested in obtaining cocaine, to which he replied that he "would look for some."

Keitz later approached Officer Burchett and asked if she could help him procure a pound of marijuana, and she replied that she could. Following that exchange, Keitz left on vacation for two weeks. Upon his return, Keitz called Burchett, at which time she informed him that she could get the pound of marijuana that he requested for $850. Keitz agreed to call her two days later to arrange a meeting place to complete the transaction. Keitz called Burchett on the prescribed day, and the two agreed to meet at her residence that afternoon to complete the transaction.

When Keitz arrived at Officer Burchett's residence, she gave Keitz the marijuana, and he weighed it with scales that he had brought with him. Keitz then informed Burchett that he had only $300 for the purchase of the marijuana. Burchett declined to allow Keitz to take the marijuana without full payment. Keitz gave Burchett the $300, and the two agreed to meet at Keitz's house later that afternoon at which time he would have the remaining money.

Upon arriving at Keitz's residence, Officer Burchett and Keitz proceeded to the kitchen area to complete the transaction. Keitz gave Burchett the $550 balance and she handed him the pound of marijuana. Burchett then watched Keitz place the marijuana on a shelf in the adjacent utility room, and the two of them went outside for a few minutes. After Burchett and Keitz had returned to the kitchen area, back-up police officers entered the residence and arrested Keitz. He was handcuffed and ordered to lay on the kitchen floor. One of the officers asked Burchett to show him where the marijuana was. She did so, and the marijuana was photographed and seized. The officers then asked Keitz if he had any drug paraphernalia, to which he replied, "Follow me." He led the officers outside to a shed and pointed to his scales, which the officers seized.

Keitz was charged by information with possession of a controlled substance with intent to distribute, a third degree felony, in violation of Utah Code Ann. § 58–37–8(1) (Supp.1992), and possession of drug paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5 (1990). The information was later amended to include an enhancement charge because both offenses occurred within one thousand feet of a little league baseball park.

Keitz made two pre-trial motions to dismiss the charge of possession of a controlled substance with intent to distribute. The first motion was based on Keitz's claim that he was entrapped into committing the offense, and the second was based on his contention that Officer Burchett's actions were so outrageous as to violate his due process rights. Keitz also filed a motion to suppress all evidence seized as a result of the warrantless search of his residence. Following a hearing, all of Keitz's motions were denied.

Keitz pleaded guilty to possession of a controlled substance with intent to distribute, conditional on preserving his right to appeal the trial court's denial of his pre-trial motions, pursuant to *State v. Sery*, 758 P.2d 935, 938–40 (Utah App.1988). As a result, the paraphernalia and enhancement charges were dismissed.

■ Keitz appeals, claiming that the trial court erred in: (1) denying his motion to dismiss on the grounds of entrapment; and (2) denying his motion to suppress on the basis of its ruling that the seizure of the evidence did not violate his rights under the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 14 of the Utah Constitution.[1]

---

1. Keitz also argues on appeal that the trial court

erred in ruling that Burchett's actions did not

## CONDITIONAL GUILTY PLEA

As a preliminary matter, we address the State's claim that the trial court improperly permitted Keitz to enter a conditional guilty plea, thereby allowing him to preserve his entrapment claim for appeal. The State argues that conditional guilty pleas are limited to the preservation of alleged fourth amendment violations raised by pre-trial motions to suppress evidence. Keitz responds that the trial court properly accepted his conditional guilty plea, and thus, his entrapment claim was properly preserved for appeal.

■ In *State v. Sery*, 758 P.2d 935 (Utah App.1988), this court stated that conditional guilty pleas are permissible only when "the plea entered by the defendant with the consent of the prosecution and accepted by the trial judge specifically preserves the suppression issue for appeal and allows withdrawal of the plea if defendant's arguments in favor of suppression are accepted by the appellate court." *Id.* at 938 (citations omitted). The reason for such rule

> is that *the legal guilt of the defendant exists only if the prosecution's case rests on admissible evidence. The crux of the dispute is resolution of the alleged error on appeal, not factual guilt or innocence.* The conditional plea is tailored to further the resolution of these specific issues at the reasonable expense of any state interest in obtaining finality in the proceedings. The plea continues to serve

a partial state interest in finality, however, by establishing admission of the defendant's factual guilt. *The defendant stands guilty and the proceedings come to an end if the reserved issue is ultimately decided in the government's favor.*

We see no logical inconsistency between a plea that admits factual guilt—or refuses to contest it—and the preserved claim on appeal that the government is constitutionally barred from being able to prove its case because of the illegal seizure of evidence.

*Id.* at 939 (quoting Comment, *Conditioned Guilty Pleas: Post–Guilty Plea Appeal of Nonjurisdictional Issues*, 26 UCLA L.Rev. 360, 378 (1978)) (emphasis added). Thus, under *Sery*, conditional guilty pleas are only proper where the defendant's plea is consented to by the prosecutor and accepted by the trial court, and where defendant admits factual guilt, but preserves for appellate review a legal issue upon which the case ultimately hinges. *Id.* at 938–39.

■ Although the holding in *Sery* only addressed the appeal of suppression motions, the logic of that holding applies with equal force to the motion to dismiss in the case at bar. Here, Keitz's plea was consented to by the prosecutor and accepted by the trial court. Further, Keitz, by entering the conditional guilty plea below, admitted his factual guilt to the subject charge. Keitz only disputes his legal guilt, claiming that he was entrapped and his

violate his due process rights under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the Utah Constitution. However, such argument is without merit.

Defendant bases his argument on dicta from *State v. Colonna*, 766 P.2d 1062 (Utah 1988), which states:

> While *we may some day be presented with a situation in which the conduct of the law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction,* the instant case is distinctly not of that breed.

*Id.* at 1065–66 (quoting *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973)) (emphasis added).

However, in that case, the Utah Supreme Court determined that the conduct of a police officer in providing marijuana and cocaine consumed by the defendant prior to an aggravated robbery, in accompanying defendant to victim's home, and in assisting in the robbery by holding a gun on the victim and even striking the victim, was not so outrageous that it would be a denial of due process under the state and federal constitutions to convict defendant of aggravated robbery. *Id.* at 1065–66. Here, Officer Burchett's conduct in soliciting drugs from Keitz, giving him back rubs and accompanying him on his motorcycle was not nearly as "outrageous" as that conduct which was sustained against a due process challenge in *Colonna*. Accordingly, we conclude that the trial court did not err in ruling that the police conduct was not so outrageous as to deny Keitz his due process rights under the state and federal constitutions.

case should be dismissed pursuant to Utah Code Ann. § 76–2–303(5) (1990), which provides, in pertinent part: "Should the court determine that the defendant was entrapped, it shall dismiss the case with prejudice...." Accordingly, where the issue on appeal is whether Keitz was entrapped into committing the offense so as to bar the State from establishing its case under section 76–2–303(5), not Keitz's factual guilt or innocence, we conclude that the trial court properly accepted the conditional guilty plea, thereby allowing Keitz to preserve his entrapment claim for appeal. *See Sery*, 758 P.2d at 938–40.

## ENTRAPMENT

Keitz claims that the trial court erred in denying his motion to dismiss on the basis of its ruling that Officer Burchett did not entrap him into committing the subject offense. Specifically, he argues that Burchett exploited their personal relationship and ultimately induced him into purchasing the pound of marijuana. The State responds that the trial court properly ruled that Keitz was not entrapped.

▆▆▆ A trial court's findings of fact relating to a claim of entrapment will be reversed on appeal only if clearly erroneous. *State v. Richardson*, 843 P.2d 517, 518 (Utah App.1992) (citing *State v. Casias*, 567 P.2d 1097, 1099 (Utah 1977)). On the other hand, the trial court's statutory construction and application of the entrapment statute present questions of law, which we review for correctness. *Id.*

Utah Code Ann. § 76–2–303(1) (1990) provides:

It is a defense that the actor was entrapped into committing the offense. Entrapment occurs when a law enforcement officer or person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence of the commission for prosecution by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording

a person an opportunity to commit an offense does not constitute entrapment.

In *State v. Taylor*, 599 P.2d 496 (Utah 1979), the Utah Supreme Court articulated particular police conduct that may be considered in determining whether entrapment has occurred:

Extreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money, are examples, depending on an evaluation of the circumstances in each case, of what might constitute prohibited police conduct. In evaluating the course of conduct between the government representative and the defendant, the transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person.

*Id.* at 503 (footnote omitted).

*State v. Martinez*, 848 P.2d 702 (Utah App.1993), similarly involved a claim by the defendant that he was induced into offering cocaine to an undercover officer based on their "close personal relationship." On appeal, this court held:

[T]he mere existence of a personal relationship does not establish entrapment. Entrapment requires some exploitation of the personal relationship. The second drug deal occurred at the defendant's suggestion, after a chance meeting, not as a result of "appeals based primarily on sympathy, pity, or close personal friendship or offers of inordinate sums of money." Defendant simply does not establish the threshold requirement of inducement.

*Id.* at 707 (quoting *Taylor*, 599 P.2d at 503) (citation omitted).

▆▆▆ Likewise, the uncontroverted evidence in the record before us is that Keitz, without any inducement whatsoever, approached Officer Burchett and inquired whether she could help him procure a pound of marijuana. His offer to purchase

the drug was independent of the previous contacts with Burchett and was not the result of "appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money." *Taylor,* 599 P.2d at 503; *accord State v. LeVasseur,* 854 P.2d 1022, 1025 (Utah App. 1993); *Martinez,* 848 P.2d at 707. Moreover, between the time of Keitz's initial offer to purchase the marijuana and the final transaction, Keitz left town for two weeks, thus further attenuating any connection between his alleged personal relationship with Burchett and the drug purchase. Accordingly, since no nexus existed between the parties' personal relationship and Keitz's purchase of the marijuana, the trial court correctly concluded that he was not entrapped into committing the offense. *See LeVasseur,* 854 P.2d at 1025; *Taylor,* 599 P.2d at 503.

## MOTION TO SUPPRESS

Keitz claims that the trial court erred in denying his motion to suppress all evidence seized as the result of the officers' warrantless entry into his residence. He argues that the seizure of the marijuana and the scales was not justified under any exception to the warrant requirement. The State responds that the trial court properly denied his motion to suppress, ruling that the seizure of the marijuana was justified under the plain-view exception to the warrant requirement, and that the scales were seized only after Keitz voluntarily led the officers to the scales and consented to their seizure.

"We review the factual findings underlying the denial of a motion to suppress evidence under a 'clearly erroneous' standard, and review the trial court's conclusions of law based thereon for correctness." *State v. Brooks,* 849 P.2d 640, 643 (Utah App.1993) (citing *State v. Brown,* 853 P.2d 851, 854–55 (Utah 1992)).

### Marijuana

As to the seizure of the marijuana, Keitz claims that such was not justified under the plain-view exception to the warrant re-

quirement. Concerning that exception, the United States Supreme Court has stated:

> The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity. The plain-view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item firsthand, its owner's privacy interest in that item is lost; the owner may retain the incidents of title and possession but not privacy.

*Illinois v. Andreas,* 463 U.S. 765, 771, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003 (1983) (citations omitted).

Additionally, in *State v. Cayer,* 814 P.2d 604 (Utah App.1991), this court held:

> "The question whether property seized in plain view of the police may be seized ... must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.".... In [*State v. Holmes,* 774 P.2d 506, 510 (Utah App.1989) ], this court described the three requirements necessary to validate seizure under the plain view doctrine: (1) lawful presence of the officer; (2) evidence in plain view; and (3) evidence that is clearly incriminating.

*Id.* at 610–11 (quoting *Texas v. Brown,* 460 U.S. 730, 737, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983) (plurality opinion)); *accord State v. Naisbitt,* 827 P.2d 969, 972 (Utah App.1992).

Applying these factors to the case at bar, the marijuana was properly seized under the plain-view exception to the warrant requirement. First, Officer Burchett was lawfully present in Keitz's home. Keitz expressly invited her into his home to complete the drug buy, and the other officers entered the home only after the commission of the said crime. Secondly, the marijuana was in plain view. As part of the illegal drug buy and ensuing arrest, Officer Burchett personally observed Keitz place the marijuana on a shelf in the adjacent utility room, where it remained until she directed backup officers to it, at which

point it was seized. Thirdly, the evidence was clearly incriminating. To satisfy that test, all that is required is that there be "probable cause to associate the property with criminal activity." *State v. Kelly*, 718 P.2d 385, 390 (Utah 1986) (quoting *Brown*, 460 U.S. at 741–42, 103 S.Ct. at 1543 (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980))). "Under that standard, an officer must only have a reasonable belief 'that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct....'" *Id.* (quoting *Brown*, 460 U.S. at 742, 103 S.Ct. at 1543). Here, it is abundantly clear that the marijuana, an illicit drug, was associated with criminal activity. Officer Burchett had first hand knowledge of the nature of the substance and had witnessed Keitz illegally purchase the said drug.

Accordingly, the seizure of the marijuana was proper under the plain-view exception to the warrant requirement, and thus, the trial court properly denied Keitz's motion to suppress the marijuana on that basis.

### Scales

■ Keitz also claims that he did not voluntarily consent to the search of his shed and the seizure of the scales. We review the trial court's ultimate conclusion that consent was voluntary under a correctness standard. *State v. Thurman*, 846 P.2d 1256, 1272 (Utah 1993) (citation omitted). The trial court's underlying factual findings will not be set aside unless they are clearly erroneous. *Id.* (citation omitted).

"[W]hether the requisite voluntariness exists depends on 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of' police conduct." *State v. Arroyo*, 796 P.2d 684, 689 (Utah 1990) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)); *accord Thurman*, 846 P.2d at 1262–63. Moreover, "[t]he prosecution bears the burden of proving that the defendant's consent was voluntary." *Thurman*, 846 P.2d at 1263 (citations omitted).

In *State v. Whittenback*, 621 P.2d 103 (Utah 1980), the Utah Supreme Court stated:

> [T]he prosecution is not required to prove that defendant knew of his right to refuse to consent in order to show voluntariness. Factors which may show a lack of duress or coercion [as to establish voluntariness] include: (1) the absence of a claim of authority to search by the officers; (2) the absence of an exhibition of force by the officers; (3) a mere request to search; (4) cooperation by the owner of the [residence]; (5) the absence of deception or trick on the part of the officer.

*Id.* at 106 (footnote omitted).

■ Here, the evidence demonstrates that following Keitz's arrest, the officers merely inquired whether he had any drug paraphernalia, to which he responded, "Follow me." He then led the officers to the shed behind his house and pointed to the scales. Although Keitz was in custody at that point, the record does not reveal that the officers used undue duress or coercion, nor did they deceive Keitz into thinking they had a search warrant to search for drug paraphernalia. *See id.* In fact, Keitz's response to the officers' inquiry demonstrates that he acted in cooperation with the police. Thus, based on the totality of the circumstances, the trial court correctly concluded that Keitz voluntarily consented to the seizure of the scales.

### CONCLUSION

On the basis of the foregoing, we conclude the trial court did not err in denying Keitz's motions to dismiss and motion to suppress. Accordingly, Keitz's convictions are affirmed.

BILLINGS and JACKSON, JJ., concur.