STATE of Utah, Plaintiff and Respondent,

v.

Michael Gilbert URIAS, Defendant and Appellant.

No. 15820.

Supreme Court of Utah.

March 25, 1980.

Brad P. Rich of Salt Lake Legal Defenders Association, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Defendant Michael Gilbert Urias appeals his conviction by a jury on three counts of aggravated sexual assault[1] and one count of aggravated burglary.[2] He assigns errors in: (a) violation of his privilege against self-incrimination, and (b) allowing testimony that the defendant might be "capable of anything" and that he goes "crazy" when intoxicated.

The victim of these crimes is Rose P——, a 72 year old widow who lives by herself in an apartment in South Salt Lake. On June 20, 1977, she went to bed at about 9:30. Just as she was dropping off to sleep, she was awakened to see a man (whom she later identified as the defendant) standing by the head of the bed. When she started to cry for help, he shoved a cloth in her mouth and proceeded to gag and tie her, hand and foot.

---

1. Pursuant to 76-5-405, U.C.A., 1953.

2. In violation of 76-6-203, U.C.A., 1953.

He then proceeded in an orgy of sexual abuse and rape on her of such vileness and brutality that we spare the printed page the details thereof because they have no material bearing upon the defendant's claims of error. Examination at the hospital later showed multiple bruises and lacerations, injury to internal organs, and evidence of recent intercourse, all corroborating that the victim had been brutalized and raped.

It can be said in summary that there is ample evidence of the defendant's guilt: this includes the victim's identification of the defendant; and that a fingerprint taken from the window sill where entrance was gained was positively matched with the fingerprint of the defendant. The victim's portable television and vacuum cleaner were found hidden under a canvas near the trailer where the defendant lived. Further, several witnesses saw the defendant near the victim's home that evening.

Defendant's contention that his right to remain silent and not to incriminate himself [3] was violated is based on the state's evidence concerning his arrest, as testified to by Officer Jim Foster:

Q. And as I recall, you testified concerning this statement as to the defendant's rights?

A. Yes, Sir.

\* \* \* \* \* \*

Q. After you read him the statement of his rights, did you ask if he understood them?

A. Yes, Sir.

Q. And what was his answer?

A. He exercised his rights and wanted to contact an attorney before he made any statement.

Q. Did he thereafter discuss this matter with you at that time?

A. No, Sir. I called his attorney.

Q. Alright—

THE COURT: The last part of the answer will be stricken. It is a volunteer statement by the witness. You asked him if he then discussed it with him and

the answer is, no. Anything else is to be disregarded.

■ We agree with the proposition that when a person invokes his constitutional rights, the prosecution should not comment thereon, nor so use it in any way that will tend to impair or destroy that privilege.[4] But we do not perceive that this was done in this case. Except for what was said above, there was no further reference to the matter, either in testimony or in argument to the jury. It is apparent that the prosecutor was having the officer testify to the circumstances of the arrest and that the information elicited was but a part of the natural sequence of events. It is difficult to see how that could have been done, or how the case could have been presented without the jury becoming aware in some manner that the defendant had, in fact, exercised his right to remain silent. It is significant that there is no indication that the prosecutor made any attempt to use that fact to cast any inference of guilt of the defendant, nor to persuade the jury to do so. In any event, what is said below about nonprejudicial error has application to this contention of the defendant.

Defendant's other assignment of error relates to testimony of Officer Charles Elsey. Defendant's girlfiend, Terry Ostermiller, had been called as a witness by the defense. In response to questions, she said that she had been living with the defendant "off and on" for about seven years; that his sexual habits were normal; and particularly, that he had no propensities for such deviant sexual acts as were inflicted upon the victim of these crimes. On cross-examination, she was asked:

Q. Do you remember making the comment to the Officers that if Mike has been drinking he would be capable of such acts?

A. No. I made the remark that I felt that he would not be capable of rape.

It was in rebuttal, and in impeachment of her testimony, that Officer Elsey gave his testimony about which the defendant complains. He stated that when he had asked

---

3. Assured by Art. I, Sec. 12, Utah Const.; Amendment V, U.S. Const.

4. See *State v. Brown*, 14 Utah 2d 324, 383 P.2d 930 (1963) and authorities therein cited.

Ms. Ostermiller about the possibility of the defendant committing a sexual assault, she stated that when he was drunk he was capable of doing most anything and that at such times he became "crazy."

Defendant is correct in asserting that the prosecution may not introduce evidence of an accused's character unless the accused himself raises the issue.[5] In this instance, through the testimony of Ms. Ostermiller, the defendant himself had opened up the subject as to whether he had the propensity to commit these offenses. The testimony of Officer Elsey was a legitimate effort to impeach and discredit that testimony and we see no error therein.[6]

In addition to what has been said above, we make some further observations about the defendant's contentions. The mandate of our statute,[7] and the policy firmly established in our decisional law, is that we do not upset the verdict of a jury merely because some error or irregularity may have occurred, but will do so only if it is something substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different result.[8] Closely related to, and to the same practical effect here, is the rule as sometimes stated: that there should be no reversal if it can fairly be concluded beyond a reasonable doubt that the error had no prejudicial effect upon the complaining party.[9]

Applying those rules in this case: even if any error had been committed, the evidence of the defendant's guilt is so overwhelming that it can be concluded beyond a reasonable doubt that any such error was harmless.

Affirmed. No costs awarded.

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.

---

5. Rule 47, Utah Rules of Evidence.

6. See *State v. Hougensen*, 91 Utah 351, 64 P.2d 229 (1936).

7. Sec. 77–42–1, U.C.A., 1953.

8. *State v. Pierre*, Utah, 572 P.2d 1338 (1977).

9. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).