1999 UT App 030

**STATE of Utah, Plaintiff and Appellee,**

v.

**John Peter KIRILUK, Defendant and Appellant.**

**No. 971200–CA**

Court of Appeals of Utah.

Feb. 11, 1999.

Linda M. Jones, Salt Lake City, for Appellant.

Jan Graham and Marian Decker, Salt Lake City, for Appellee.

Before Judges WILKINS, P.J., BILLINGS, and JACKSON.

## AMENDED OPINION [1]

BILLINGS, Judge:

¶ 1 Defendant John Kiriluk appeals his conviction of criminal homicide, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (Supp.1997). We affirm.

### FACTS

¶ 2 "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict. We recite the facts accordingly." *State v. Hamilton,* 827 P.2d 232, 233–34 (Utah 1992) (citations omitted). However, we are mindful that we must determine if the evidence relied upon by the jury "is so compelling that we can conclude, *beyond a reasonable doubt,* that the jury would have reached the same verdict." *State v. Dahlquist,* 931 P.2d 862, 867 (Utah Ct.App.1997); *see State v. Mitchell,* 779 P.2d 1116, 1121 (Utah 1989) (A "reviewing court is to decide whether, considering all the evidence, there was a reasonable likelihood that the jury would have decided the case differently.") (citation omitted).

¶ 3 Defendant and the victim were involved in the formulation and sale of methamphetamine. The victim served a variety of functions for defendant, including that of courier between defendant and others involved in the drug trade. In his last assignment, defendant gave the victim a large quantity of precursor to deliver to a methamphetamine "cook," [2] and told him to return the finished product. The finished methamphetamine was never returned and the victim was unable to produce the missing precursor. Defendant was upset with the victim for losing the precursor and concerned for his own well-being because defendant owed money to his suppliers. Defendant confronted the victim about the missing precursor, struck the victim in the face, and threatened the victim's life. Following this assault, defendant, the victim, and a number of other eventual codefendants left defendant's house in a car, ostensibly to search for the missing precursor. Defendant and the vehicle's occupants ended up in a remote area of Bluffdale, Utah. Defendant, the victim, and a third male occupant, Damon Mumford, who had met the victim only that day, exited the vehicle. Defendant took a knife from one of the female passengers, and the three men walked a short distance away. Approximately thirty minutes later, only defendant and Damon returned to the vehicle with a bloody knife and some of the victim's possessions. Defendant, Damon, and the others returned to defendant's apartment where defendant partially burned the victim's possessions, and directed two of the women to finish the job.

¶ 4 The victim's body was found on March 22, 1996. Because defendant was one of the last people seen with the victim, police visited his apartment on the night of March 25, 1996. Upon arrival, the police saw drug paraphernalia in plain view. While some officers remained at the apartment, defendant agreed to accompany other officers to the police station for questioning.

¶ 5 At the police station, officers interviewed defendant two separate times, and

---

1. This Amended Opinion replaces the Opinion issued on December 10, 1998, in Case No. 971200–CA.

2. "Precursor" can be one of several ingredients necessary for the production of methamphetamine.

provided him with *Miranda* warnings at the outset of both interviews. In the first interview, the officers initially focused their questioning on the homicide. However, after receiving a phone call about drugs found in defendant's apartment, the focus changed and the police began to discuss the drugs. At this point, defendant unequivocally invoked his right to remain silent, but the police continued to briefly question him about the drugs. Around the same time, and after invoking his *Miranda* rights, defendant consented to a search of his apartment. Thereafter, the first interview ended.

¶ 6  Two hours later, officers again questioned defendant. In the second interview, the officers questioned defendant only about the homicide. Defendant did not invoke his right to remain silent in this interview and openly discussed his version of the incidents leading up to the homicide. Initially, defendant told the officers that the victim was taken away by some "Mexicans" and killed. Defendant later switched stories and claimed that Damon led the victim away and returned alone, stating: "It's done." Defendant was later charged with and convicted of criminal homicide and now appeals.

## ANALYSIS

### I.  Violation of Defendant's *Miranda* Rights

¶ 7  Defendant first argues that the police violated his *Miranda* rights when, after invoking his right to remain silent, he was questioned a second time the same night. We review this alleged constitutional violation under a correction of error standard. *See State v. Gutierrez*, 864 P.2d 894, 898 (Utah Ct.App.1993).

¶ 8  As a threshold matter, we disagree with defendant's contention that he invoked his right to counsel. Defendant initially waived his *Miranda* rights at the outset of the first interview. He asserts, however, that when the interview topic switched to drugs, he invoked his right to counsel and thus the officer was obligated to cease his questioning. Our supreme court has clearly articulated the standard for a postwaiver invocation of counsel:

[O]nce a suspect has clearly, knowingly, and intelligently waived his *Miranda* rights, [*Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)], places the requirement of clarity with respect to postwaiver invocation of those rights on the suspect. As the majority in *Davis* describes it, the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."

*State v. Leyva*, 951 P.2d 738, 743 (Utah 1997) (quoting *Davis*, 512 U.S. at 459, 114 S.Ct. at 2355). Here, in the context of the colloquy between defendant and the interviewing officer, defendant fails the *Davis* test.

Q: Okay, Uh, back at the apartment there has been some narcotics found and some drugs found, okay? Also at the apartment, while they were there, people came up and were startin to make buys, right, right then and there while, while uh, my Sergeant and some other, uh, cops were there. Okay? Now this happened inside your apartment. You're going to be arrested for that, okay? Now, do, do you want any, make any statements in regard to that. Keep, keeping in mind everything about you do have the right to remain silent. You do have the right to have to have an attorney, things of that nature. (Det.Carr)

A: Are you arresting me?  (Inaudible) (John Kiriluk)

 . . . .

Q: I'm not going to bullshit ya here. That's what the call was about, okay? The Sergeant said while they were there they've arrested four people there. Four people that have come up there, tried to make buys, someone came up with a bottle of pills, things of that nature, okay? But apparently there was some dope found actually at your apartment. Okay? Now that in and of itself is enough for possession. Bare minimal possession. There's not sayin that you're dealin, okay? But that's bare minimal possession. Okay? And that's, and that's what you'd be lookin at right now, *so again, do you want to make*

*any statements in that regard to anything that goes, went on in your apartment that has to do with the drugs that were found there?* (Det.Carr)

A: *I don't.* (John Kiriluk)

(Emphasis added.) Defendant's argument that he invoked his right to counsel hinges on his response "I don't," when asked whether he wanted to make any statements regarding drugs found in his apartment. This statement is insufficient, in any light, to suggest to the interviewing officer that he should have ceased his questioning because defendant was invoking his right to counsel. Thus, we do not further address this argument.

¶ 9 In *Michigan v. Mosley*, 423 U.S. 96, 102–03, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), the United State Supreme Court held that its decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), did not create "a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." (Footnote omitted.) In *Mosley*, the defendant was arrested in connection with a series of robberies and was advised of his *Miranda* rights before a first interview concerning the robberies commenced. *See Mosley*, 423 U.S. at 97, 96 S.Ct. at 323. Mosley told the officers that he did not wish to answer any questions concerning the robberies and the officers immediately stopped their questioning. *See id.* Later that afternoon, Mosley was again given his *Miranda* rights and then interviewed by a different officer concerning an unrelated homicide, and confessed to participating in the homicide. *See id.* at 98, 96 S.Ct. at 324. Mosley later moved to suppress his statements concerning the homicide, arguing that the officers were barred from asking him any further questions after he had invoked his right to remain silent. *See id.*

¶ 10 In reversing the Michigan Court of Appeals' conclusion that Mosley's *Miranda* rights were violated, the Supreme Court noted there was no per se proscription against further questioning, and concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends, under *Miranda*, on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Id.* at 104, 96 S.Ct. at 326 (footnote omitted). The Court looked at a number of factors in concluding no *Miranda* violation occurred: that the questioning abruptly ended when Mosley invoked his right to remain silent; that two hours passed before a different officer interviewed Mosley about a different crime; and that Mosley was given his full *Miranda* rights at the outset of the second interview. *See id.* at 104–05, 96 S.Ct. at 327. Thus, the Court concluded that "[t]he subsequent questioning did not undercut Mosley's previous decision not to answer [the officer's] inquiries." *Id.*

■ ¶ 11 Defendant contends that even under *Mosley*, his *Miranda* rights were violated. The issue is whether, after his invocation, the continued questioning in the first interview and the discussion of the same crime in the second interview makes *Mosley* inapplicable because defendant's *Miranda* rights were not "scrupulously honored" in the first interview. This is a question we need not answer because we conclude that, even if defendant's *Miranda* rights were violated, this violation was not prejudicial. Even if the instant violation rose to the level of a constitutional violation, which we need not determine, *see State v. Troyer*, 910 P.2d 1182, 1189 (Utah 1995), it was harmless beyond a reasonable doubt. *See State v. Morrison*, 937 P.2d 1293, 1296 (Utah Ct.App. 1997) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 628–29, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353 (1993)). "In evaluating whether an evidentiary error was harmless beyond a reasonable doubt, we focus on 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'" *Id.* at 1296 (citation omitted). "This higher standard does not require reversal solely because we might imagine a single juror whose decision hinged on [defendant's] confession. Rather, 'we look to what seems to us to have been the probable impact of the confession on the minds of the average juror.'" *State v. Villarreal*, 889 P.2d 419, 425 (Utah 1995) (quoting *Harrington v. California*, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969)).

A number of factors determine whether an error was harmless beyond a reasonable doubt, including. "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence collaborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

*Id.* at 425–26 (citations omitted).

¶ 12    We conclude that the testimony from the second interview of which defendant complains was primarily cumulative, and harmless beyond a reasonable doubt. The officer who interviewed defendant testified that: defendant claimed he did not kill the victim; defendant was "visibly shaken" when a tree limb from the murder scene was produced at the start of the second interview; defendant had earlier threatened to kill the victim; defendant had twice struck the victim before the murder; and defendant gave at least three different versions of events the night of the murder.

¶ 13    However, all the testimony in question came from other state witnesses, with the exception of defendant's reaction when shown the tree branch at the second interview. We do not believe that defendant's "shaken" reaction, alone, is sufficient to constitute prejudice. Furthermore, the testimony elicited had little importance in the State's case because its case against defendant was otherwise strong: Defendant was angry at the victim for losing a substantial quantity of methamphetamine precursor and had both struck and threatened to kill the victim; defendant and codefendant Damon Mumford were the two last people seen with the victim; Damon had only met the victim that same day and was present as "muscle" to intimidate the victim; defendant returned with a bloody knife and the victim's possessions; and finally defendant later partially burned the victim's personal effects and directed others to complete the burning. Thus, we conclude the trial court's denial of

defendant's Motion to Suppress does not constitute prejudicial error because the State's case, absent the testimony in question, was compelling beyond a reasonable doubt.

## II.    Was Consent to Search Defendant's Apartment Voluntary?

¶ 14    Next, defendant argues that a consent to search his apartment was per se involuntary because it was obtained after his *Miranda* rights were violated and thus requires the suppression of the post-violation evidence. "[A] trial court's ultimate conclusion that a consent was voluntary or involuntary is to be reviewed for correctness. The trial court's underlying factual findings will not be set aside unless they are found to be clearly erroneous." *State v. Thurman*, 846 P.2d 1256, 1271 (Utah 1993) (citation omitted).

¶ 15    Utah courts have not addressed this issue, but there is ample authority from other state and federal jurisdictions holding that a consent to search is not an incriminating statement for Fifth Amendment purposes. In *United States v. Rodriguez–Garcia*, 983 F.2d 1563 (10th Cir.1993), the defendant was read his *Miranda* rights and invoked his right to remain silent. *See id.* at 1566. The officers, however, still sought and obtained his consent to search two vehicles and a storage unit. *See id.* The Tenth Circuit rejected defendant's argument that his *Miranda* rights were violated by the officers seeking his consent:

> [A] consent to search is not the type of incriminating statement which the Fifth Amendment was designed to address. Consenting to a search is not "evidence of a testimonial or communicative nature" which would require officers to first present a *Miranda* warning.... We hold that Rodriguez' voluntary consent to the searches ... was unaffected by the invocation of his *Miranda* rights.

*Id.* at 1568.[3]

¶ 16    We conclude the voluntariness of defendant's consent was unaffected by his invo-

---

**3.**    *See United States v. Smith*, 3 F.3d 1088, 1098 (7th Cir.1993) ("We have held that a consent to search is not a self-incriminating statement, and,

therefore, does not amount to interrogation. This view comports with the view taken by every court of appeals to address the issue."), *cert.*

cation of *Miranda.* Thus, we affirm the trial court's conclusion that defendant's consent to search his apartment was voluntary.[4]

### III. *Rimmasch* or Competency Claims on Appeal

■ ¶ 17 Defendant next complains the trial court erred in allowing a State witness to testify that substances seized at his apartment were methamphetamine precursor.

¶ 18 At trial, defendant objected on foundational grounds to a detective's testimony that it was the detective's opinion precursor to methamphetamine was found in jars in defendant's apartment. *See Provo City Corp. v. Spotts,* 861 P.2d 437, 442–43 (Utah Ct.App.1993) (outlining test for admitting lay testimony and circumstantial evidence used to identify narcotics). On appeal, he challenges the testimony under Utah Rule of Evidence 702 and *State v. Rimmasch,* 775 P.2d 388 (Utah 1989) and *State v. Crosby,* 927 P.2d 638 (Utah 1996). However, even if we were to hold that defendant preserved his objection and that the evidence should have been excluded, again we simply cannot conclude the detective's opinion that the jar contained precursor was prejudicial. The detective admitted in cross-examination that the field tests of the substance in the jar were inconclusive. Further, there was ample evidence that the defendant and the victim were in a dispute over the victim's loss of precursor given to him by defendant. Final-

ly, the prosecutor introduced testimony that: Defendant was angry with the victim about the missing precursor; defendant owed his suppliers money for the precursor; and that defendant both struck the victim and threatened his life because of the missing precursor. Thus, "we can conclude, beyond a reasonable doubt, that the jury would have reached the same verdict" without hearing the detective's testimony. *Dahlquist,* 931 P.2d at 867.

### IV. Motion for Mistrial

■ ¶ 19 Defendant next argues that the trial court abused its discretion when it denied his Motion for a Mistrial. "A trial court has discretion to grant or deny a motion for a mistrial and its decision will remain undisturbed absent an abuse of that discretion. A defendant has the burden of persuading this court that the conduct complained of prejudiced the outcome of the trial." *State v. Price,* 909 P.2d 256, 262 (Utah Ct.App.1995) (citations omitted), *cert. denied,* 916 P.2d 909 (Utah 1996); *see State v. Workman,* 635 P.2d 49, 53 (Utah 1981) ("[T]he denial of motion for a mistrial does not constitute an abuse of discretion where no prejudice to the accused is shown.").

¶ 20 Here, defendant complains that the State violated Rule 16 of the Utah Rules of Criminal Procedure by failing to provide him with the serology test conducted on a codefendant's t-shirt for the victim's blood.[5] As-

---

*denied, Smith v. United States,* 510 U.S. 1061, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994); *Cody v. Solem,* 755 F.2d 1323, 1329 (8th Cir.) (holding *Miranda* violation does not invalidate consent to search as Fifth Amendment only protects "testimonial and communicative" evidence), *cert. denied,* 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *People v. Beaver,* 725 P.2d 96, 99 (Colo. Ct.App.1986) (same); *People v. Alvarado,* 268 Ill. App.3d 459, 206 Ill.Dec. 15, 644 N.E.2d 783, 786–89 (1994) (holding *Miranda* violation does not vitiate voluntary consent), *appeal denied,* 161 Ill.2d 530, 208 Ill.Dec. 363, 649 N.E.2d 419 (1995); *State v. Juarez,* 120 N.M. 499, 903 P.2d 241, 246 (Ct.App.) ("[A] request for consent to search is not, by itself an interrogation, just as a consent to search is not an incriminating response."), *cert. denied,* 120 N.M. 184, 899 P.2d 1138 (1995).

4. Defendant also asserts that his consent to search was invalid because it was obtained by the exploitation of a *Miranda* violation. His

claim is not well founded. "[T]he exploitation analysis ... is triggered only if the prior illegality is a violation of the Fourth Amendment." *Thurman,* 846 P.2d at 1262 (citing *New York v. Harris,* 495 U.S. 14, 19, 110 S.Ct. 1640, 1643–44, 109 L.Ed.2d 13 (1990)) (additional citations omitted). Although in his initial pleading, defendant asserted that the prior illegality was the warrantless entry into his apartment, both at trial and on appeal he complains only of the alleged *Miranda* violation as the prior illegality. Thus, an exploitation analysis is inappropriate and we decline to address it further.

5. Rule 16 of the Utah Rules of Criminal Procedure states in pertinent part:

(a) [T]he prosecutor shall disclose to the defense upon request the following material or information of which he has knowledge:

....

(4) evidence known to the prosecutor that tends to negate the guilt of the accused,

suming for purposes of this argument only, that a discovery violation did occur, we conclude that defendant has failed to demonstrate that he was prejudiced by not having a copy of the serology report. The trial court correctly pointed out that either a positive or negative result of the test on the codefendant's t-shirt would have no bearing because the evidence had already established that both defendant and the codefendant were present at the time of the victim's death. Defendant also argues that he was prejudiced because he was unable to review the serology test methodology. We agree with the trial court that because the test results are not prejudicial to defendant, similarly not knowing the test methodology is equally non-prejudicial. We therefore conclude the trial court did not abuse its discretion when it denied defendant's Motion for a Mistrial.

## V. Curative Instruction

■ ¶ 21 Defendant also argues that the trial court's failure to provide a curative instruction regarding hearsay testimony which was admitted without objection is grounds for reversal. Specifically, defendant complains the trial court erred when it allowed Rebecca Mumford, a codefendant, to testify that her husband Damon told her defendant murdered the victim. We disagree. Rule 19(c) of the Utah Rules of Criminal Procedure states:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, stating distinctly the matter to which he objects and the grounds of his objection. Notwithstanding a party's failure to object, error may be assigned to instructions in order to avoid a manifest injustice.

Utah R.Crim. P. 19(c).

¶ 22 In State v. Blubaugh, 904 P.2d 688, 700 (Utah Ct.App.1995), cert. denied, 913 P.2d 749 (Utah 1996), this court held that "[b]ecause defendant failed to object to the instruction at trial, we can reach the issue only to avoid manifest injustice. (Citation

omitted.) However, the manifest injustice exception has no application in cases in which the defendant invited the very error complained of on appeal." Earlier, in State v. Hoffman, 733 P.2d 502, 504 (Utah 1987), our supreme court held that a defendant failed to preserve his objection to jury instructions when "he proposed no jury instruction ... [and] he registered no objection to the instructions which the court gave." The Hoffman court thus held the objection to the jury instructions was not properly preserved and declined to address it on appeal. See id. at 504; see also State v. Swan, 279 Mont. 483, 928 P.2d 933, 935 (1996) (citation omitted) ("[T]his Court will not predicate error upon the failure to give an instruction when the party alleging the error failed to offer the instruction."); Etcheverry v. State, 107 Nev. 782, 821 P.2d 350, 351 (1991) (" '[T]he failure to object or to request special instruction to the jury precludes appellate consideration.' '[I]t was incumbent on him to prepare such an instruction and request the court give it.' ") (citation omitted); James v. State, 817 P.2d 1279, 1281 (Okla.Crim.App.1991) ("This Court has repeatedly held that a defendant must object to the instruction and must submit written requested instructions should he not be satisfied with the instructions of the court.").

¶ 23 Defendant failed either to object to the jury instructions or to provide the trial court with a curative instruction on the hearsay testimony. The trial court specifically told defendant's counsel: "I will invite you to provide me an instruction that we can deal with when we finally instruct the jury." However, counsel never provided such a curative instruction, and before the jury instructions were given to the jury, the trial court noted that:

Court: There was never presented to me any requested instruction regarding the issue that came up during the course of the trial as to the hearsay. And so I assume it's waived.

Counsel: And I had intended with our instruction on the informer/benefit to the witness testimony to make that—to make

mitigate the guilt of the defendant, or mitigate the degree of the offense for reduced punishment; and (5) any other item of evidence which the court determines on good

cause shown should be made available to the defendant in order for the defendant to adequately prepare his defense.
Utah R.Crim. P. 16(a).

*an argument based on that instruction that I had submitted.*

Court: *Okay. And that was never presented. All right.*

(Emphasis added.) The facts here are similar to those in *Blubaugh,* in which the defendant also failed to either object to the jury instructions or to provide a curative instruction for the alleged error. *See* 904 P.2d at 700. We likewise decline to address the question of whether there has been a manifest injustice because the "[defendant] invited the very error complained of on appeal." *Id.* Thus we conclude defendant waived any claimed error in the instructions given.[6]

## CONCLUSION

¶ 24   In sum, we uphold defendant's conviction of criminal homicide. First, we do not reach the question of whether defendant's *Miranda* rights were violated because we conclude that any violation was not prejudicial. Second, we conclude defendant's consent to a search of his apartment was voluntary, and not per se coercive, despite any *Miranda* violation. Third, the trial court did not commit prejudicial error when it allowed a police detective to testify as to his belief that a jar in defendant's apartment contained methamphetamine precursor. Fourth, we conclude the trial court did not abuse its discretion when it denied defendant's Motion for a Mistrial. Next, because defendant neither objected to the jury instructions given nor provided a curative instruction concerning alleged hearsay testimony, we conclude the trial court did not commit reversible error when it failed to give a curative instruction. Finally, because defendant's several claims of error are without merit or have been waived, there is no cumulative error.

¶ 25   WE CONCUR: MICHAEL J. WILKINS, Presiding Judge and NORMAN H. JACKSON, Judge.

---

6.   Finally, defendant argues we should reverse his conviction under the cumulative error doctrine. Because we conclude defendant's several claims of error on appeal have been waived or are without merit, our confidence in the trial court's verdict is not undermined. *See State v. Harmon,* 956 P.2d 262, 277 (Utah 1998) (citing *State v. Dunn,* 850 P.2d 1201, 1229 (Utah 1993)). .We thus conclude there is no cumulative error.