1999 Utah Ct. App. 325

STATE of Utah, Plaintiff and Appellee,

v.

Karen MAAS, Defendant and Appellant.

No. 981654–CA.

Court of Appeals of Utah.

Nov. 12, 1999.

Happy Morgan, Moab, for Appellant.

Jan Graham, Atty. Gen., and Jeffrey S. Gray, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BILLINGS, DAVIS and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Appellant Karen Maas appeals her convictions of unlawful use of a credit card and related charges. We affirm.

## FACTS

¶ 2 We recite the facts in the "light most favorable to the jury verdict." *State v. Kiriluk*, 975 P.2d 469, 470 (Utah Ct.App. 1999). In the fall of 1997, Karen Maas worked as a cashier at the Alco Department Store (Alco) in Moab, Utah. On December 14, Robert Prickett bought some minor items at Alco, using his credit card to pay for them. He made the purchase, totaling $11.48, at Maas's register. After the transaction, Prickett got his credit card back and left the store.

¶ 3 About one-half hour later, another purchase was made on Prickett's credit card account, again at Maas's register. This transaction was for a camping set with a price of $211.49. Prickett did not buy the set. When he saw the charge on his credit card bill, he contacted Alco to dispute the charge. The signature on the credit slip for that purchase was not his signature. He had not authorized anyone else to use his card. About one month after the unauthorized transaction, Maas pawned the camping set at a local Moab pawn shop.

¶ 4 In the course of investigating the unlawful credit card charge, Grand County Sheriff's Department Officer Neal gathered evidence including pawn slips, time cards showing Maas was working at the time of the charges, and credit card slips. After collecting the evidence, Officer Neal went to Maas's home to interview her. He explained the evidence he had collected, advised Maas of

her *Miranda* rights, and asked if she wanted to talk to him. Maas responded, "Why, you have everything anyway? No, I don't want to talk to you." Officer Neal then left Maas's home, making no further attempt to interview her.

¶ 5 The State charged Maas with Falsely Signing Evidence of a Credit Card Transaction, in violation of Utah Code Ann. § 76–6–506.1(4) (1999); Unlawful Use of a Financial Card, in violation of Utah Code Ann. § 76–6–506.2(1) (1999); and Property Obtained by Unlawful Financial Transaction Card Conduct, in violation of Utah Code Ann. § 76–6–506.4 (1999).

¶ 6 At trial, Officer Neal testified about his investigation and his attempted interview with Maas. He testified about their verbal exchange, which included Maas's invocation of her *Miranda* right to silence.[1] Defense counsel objected to the testimony, and attempted to exclude the entire exchange. The trial judge had permitted the question, intending only to allow the comment before Maas's invocation of rights. In a conference after the testimony, the judge acknowledged that, although the first comment, "Why, you have everything anyway," should have come in, the second part, "No, I don't want to talk to you," was disclosed in error. The judge offered to instruct the jury to disregard that part of the testimony. Defense counsel declined, preferring not to call the statement to the jury's attention.

¶ 7 In her defense at trial, Maas testified that a man came to the store and purchased the camping set at her register. She stated that a few days later, the same man came back and tried to return the camping set for cash, again at Maas's register. Maas explained that she could not refund cash for a credit card purchase. However, Maas told the man she was interested in the set, and arranged to buy it for cash. She told him her home address so he could drop off the set later and get the cash.

¶ 8 Maas testified that the next evening, the man came to Maas's home with the set. She bought the set as a gift for her boyfriend, who was there with Maas. Her boyfriend also testified that some man came to Maas's home that night, though he did not see the man clearly or witness the transaction. Some time later, Maas needed cash, so she pawned the camping set at a Moab shop.

¶ 9 Maas also testified about her conversation with Officer Neal. On direct examination, defense counsel asked her what happened when the officer came to her house. Maas testified: "Well, he came to my home and he showed me different pieces of information, the slips, the pawn ticket and things like that. He asked me, was there anything that I wanted to say, and I told him there was nothing I could say."

¶ 10 Defense counsel then asked Maas to explain that comment. Maas responded: "I didn't feel there was anything I could say at the moment. Seeing that these pieces of information, the way it added up, I just didn't think that I should say anything at the moment, that I should seek counsel or do something."

¶ 11 During closing arguments, the prosecution attacked the credibility of Maas's story. He noted that to believe Maas's explanation, the jury would have to disregard the evidence. The prosecutor listed the substantial circumstantial evidence in detail, including Maas's response, "No, you have everything anyway," to Officer Neal when asked if she wanted to talk. The prosecutor misquoted the statement, as Officer Neal had testified that Maas had said, "Why, you have everything anyway." The prosecutor asked the jury to find Maas guilty, and not let her "lie [her] way out of this." The defense did not object to the prosecutor's argument.

¶ 12 Maas now appeals, arguing the prosecution's disclosure of her invocation of her *Miranda* rights was prejudicial error and denied her a fair trial.

1. His testimony was:
 Q. What was the nature of your conversation with Ms. Maas?
 A. I met with Karen [Maas], I identified myself. I explained the reason I was there was I was investigating misuse of a credit card. At that time I explained to Ms. Maas all the evidence I had acquired up to that time. At the time I advised Karen of her rights, read her a waiver, asked her if she wanted to talk to me. She responded "Why, you have everything anyway? No, I don't want to talk to you."

## ISSUE AND STANDARD OF REVIEW

■ ¶ 13 The sole issue before this court is whether the prosecution improperly used Maas's invocation of her right to silence against her at trial, thereby violating her due process rights. Though underlying factual matters are within the discretion of the trial court, whether a given set of facts gives rise to a constitutional violation is a matter of law. *See, e.g., Kiriluk,* 975 P.2d at 471 (reviewing alleged violation of *Miranda* rights under correction of error standard).

■ ¶ 14 Even if a constitutional violation exists, this court will not reverse if the violation is harmless. *See State v. Harmon,* 956 P.2d 262, 268 (Utah 1998). However, "[i]f the error is substantial and prejudicial to the extent that there is a reasonable probability that it affected the reliability of the trial outcome, then a new trial is required." *Id.* Also, when a violation has occurred, "the State bears the burden of demonstrating that the improperly elicited testimony was harmless beyond a reasonable doubt." *State v. Morrison,* 937 P.2d 1293, 1296 (Utah Ct.App. 1997).

## ANALYSIS

■ ¶ 15 Maas argues her right to silence was violated when the prosecution elicited testimony that Maas invoked her right to remain silent after she was given a *Miranda* warning.[2] She asserts this was a violation of due process under the United States Supreme Court's decision in *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, the testimony in Maas's case is easily distinguishable from the circumstances of *Doyle* and its progeny.

¶ 16 In *Doyle,* the Court held that the use for impeachment purposes of a defendant's exercise of his right to silence violates due process. *See id.* at 611, 96 S.Ct. at 2241. On cross examination of the defendants in *Doyle,* the prosecution challenged defendants' exculpatory explanation by questioning why defendants did not tell the arresting officer their story of innocence. *See id.* at 613–15 & n. 5, 96 S.Ct. at 2242–43 & n. 5. The inference raised by this line of questioning was that silence equaled guilt because an innocent person would have immediately told the exculpatory story. *See id.* at 617–19, 96 S.Ct. at 2244–45.

¶ 17 The Court rejected the State's argument that use of a defendant's silence for impeachment was necessary. First, the Court noted that because *Miranda* warnings are required, thus notifying a suspect of his right to silence, no inference could be properly drawn from a suspect's silence. *See id.* at 617, 96 S.Ct. at 2244. Second, the Court noted the inherent unfairness of notifying a person of their rights, then penalizing them for exercising such rights. *See id.* at 618, 96 S.Ct. at 2245. Thus, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.*

¶ 18 The Court further explained the *Doyle* rule in *Greer v. Miller,* 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). In *Greer,* the prosecutor attempted to impeach defendant's explanation of his involvement in a murder by asking why defendant did not tell his story to the arresting officer. *See id.* at 758–59, 107 S.Ct. at 3105. Defense immediately objected to the question. The trial judge sustained the objection and instructed the jury to disregard the question. *See id.* at 759, 107 S.Ct. at 3105. Defendant appealed his conviction for murder, arguing the question constituted a *Doyle* violation. *See id.* at 759–60, 107 S.Ct. at 3105–06.

¶ 19 The Court upheld the conviction, finding no *Doyle* violation. The Court stated that " '*Doyle* rests on "the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." ' " *Id.* at 763, 107 S.Ct. at 3107 (citations omitted). However, the Court emphasized that *Doyle*

---

**2.** The State argues that Maas has waived this issue on appeal because she refused the offered curative instruction. We disagree. Though the State would be correct in arguing Maas waived any appeal of jury instruction issues, the substan- tive issue on appeal was properly preserved through a contemporaneous objection. *Cf. State v. Shickles,* 760 P.2d 291, 300 (Utah 1988) (stating claim of error preserved by timely objection even absent request for curative instruction).

forbids "'*the use* for impeachment purposes' of a defendant's postarrest silence." *Id.*, at 763, 107 S.Ct. at 3108 (quoting *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245). The Court noted that cases in which *Doyle* violations occurred involved "specific inquiry or argument" about a defendant's post-*Miranda* silence. *Id.* at 764, 107 S.Ct. at 3108. In contrast, when the trial court sustained the objection to the question and gave an instruction to disregard, and the prosecutor did not attempt the question again nor argue it to the jury, the Court determined there was no *use* of post-*Miranda* silence. *See id.*, at 763, 107 S.Ct. at 3108.

 ¶ 20 Thus, a *Doyle* violation involves more than simply referring to a defendant's post-*Miranda* silence. A prosecutor must specifically inquire about or argue using a defendant's exercise of his rights in a context that would impeach a defendant's exculpatory explanation of his conduct. The key is the framing of a question or a prosecutor's comment that demands an explanation from the defendant and raises the inference that silence equals guilt. The "mere mention" of a defendant's exercise of his rights does not automatically establish a violation. *Jones v. Stotts,* 59 F.3d 143, 146 (10th Cir. 1995). "[R]ather, it is the prosecutor's exploitation of a defendant's exercise of his right to silence which is prohibited." *Id.*

 ¶ 21 Similarly, the Utah Supreme Court has stated that "the mere mention that a defendant invoked his constitutional rights does not prima facie establish a due process violation." *Harmon,* 956 P.2d at 268.[3] In evaluating whether the disclosure of a defendant's exercise of *Miranda* rights is a *Doyle* violation, a court must look at the particular use to which the disclosure is put, and the context of the disclosure. *See id.* "[T]he State must, in some way, use the defendant's silence to undermine the exercise of those rights guaranteed ... before it can be said that such rights have been violated." *Id.*

¶ 22 In *Harmon,* defendant's invocation of rights was disclosed incidentally in testimony as defendant read a portion of an officer's report intended to refresh defendant's recollection of events. *See id.* at 266. Defense counsel objected, but refused a curative instruction offered by the court, deciding not to draw further attention to the statement. *See id.* at 267. On appeal, the court found no *Doyle* violation in the disclosure. The court noted that the disclosure was elicited "inadvertently." *Id.* at 269. Furthermore, the prosecutor did not pursue defendant's silence in the remainder of cross examination, nor did he try to use defendant's silence "to cast an inference of his guilt." *Id.*

¶ 23 Similarly, in *State v. Urias,* 609 P.2d 1326 (Utah 1980), defendant's invocation of *Miranda* rights was incidentally disclosed when the arresting officer testified about the arrest. *See id.* at 1328. The court noted, "when a person invokes his constitutional rights, the prosecution should not comment thereon, nor so use it in any way that will tend to impair or destroy that privilege." *Id.* However, the court concluded that no such impermissible use occurred; instead, the officer simply testified about "the circumstances of the arrest and ... the information elicited was but a part of the natural sequence of events." *Id.* The court also noted there was no attempt by the prosecutor to use defendant's silence to cast an inference of guilt. *See id.*

 ¶ 24 Maas's situation is similar to that of *Harmon* and *Urias.* The disclosure of Maas's invocation of rights was likewise incidental to the description of Officer Neal's conversation with Maas. Although Maas asserts that the sole purpose of this testimony was to raise the issue of her credibility, the prosecution actually wanted to present Maas's statement, "Why, you have everything anyway." The further statement made by the prosecutor in closing argument, "No,

**3.** The *Harmon* decision was unusual in that two justices joined fully in the main opinion, one justice concurred in the result, and two justices concurred in the result with a concurring opinion. Justice Durham wrote a concurrence in which Justice Zimmerman joined. However, the issues addressed by Justice Durham in her con-

currence do not detract from the analysis of the *Doyle* violation issue, but reflect other concerns. It appears that Justices Durham and Zimmerman do not take issue with the court's *Doyle* analysis. *See Harmon,* 956 P.2d at 277 (Durham, J. concurring).

you have everything anyway," was inadvertent and is not significant enough on its own to violate *Doyle.*

¶ 25 Furthermore, as in *Harmon* and *Urias,* the prosecution did not attempt to cast the forbidden inference that Maas's silence equaled guilt. He did not raise the issue again during the trial, not even during cross examination of Maas. When an officer simply testifies about the circumstances surrounding an interview, a part of which is defendant's silence, without using defendant's silence to impeach her credibility, there is no violation of the *Doyle* principle. *See State v. Bakalov,* 979 P.2d 799, 820 (Utah 1999). In sum, the prosecution did not *use* Maas's silence to impeach her in violation of *Doyle.*[4]

### CONCLUSION

¶ 26 Because the prosecution did not use Maas's invocation of her right to silence to impeach her, nor to cast an inference of guilt at trial, there was no violation of her due process rights. Accordingly, we affirm.

¶ 27 WE CONCUR: JAMES Z. DAVIS, Judge, and NORMAN H. JACKSON, Judge.

---

4. Maas asserts that the prosecution did improperly argue her post-*Miranda* silence during closing arguments. She points to a passage where the prosecutor refers to Maas as a liar and contends that this improperly used her silence and emphasized to the jury that Maas took her time in making up a story. To constitute an impermissible comment on a defendant's silence, a prosecutor's remark must be " ' "manifestly intended or ... of such character that a jury would naturally and necessarily construe it to amount to a comment on defendant's silence." ' " *State v. Tucker,* 709 P.2d 313, 315 (Utah 1985) (citations omitted). Here, the remarks were not of such character that a jury would take them as a comment on Maas's silence. The disputed passage makes no mention of time or silence, and in greater context, is clearly an attack on the incredible nature of Maas's explanation.