STATE of Utah, Plaintiff and Appellee,

v.

**Kim BEDDOES, Defendant and Appellant.**

No. 930800–CA.

Court of Appeals of Utah.

Feb. 9, 1995.

Ronald J. Yengich and Hakeem Ishola, Salt Lake City, for appellant.

Todd A. Utzinger and Jan Graham, Salt Lake City, for appellee.

Before Judges Bench, Orme, and Wilkins.

BENCH, Judge:

Defendant Kim Beddoes appeals his third degree felony conviction for possession of a controlled substance with intent to distribute, a violation of section 58–37–8 of the Utah Code. We affirm.

## FACTS

The Utah Highway Patrol stopped Ned Shepherd in Juab County. A search of Shepherd's vehicle revealed fifteen pounds of marijuana. Officers also found, in Shepherd's wallet, a list of names and telephone numbers, including defendant's. The Juab County Sheriff's office, from independently gathered information, suspected that defendant had been selling drugs. Shepherd explained that he and defendant had been friends for over twenty years, and that they

had engaged in prior drug dealings. The officers decided to use Shepherd in a sting operation against defendant. In exchange for helping the State gather evidence against defendant and other suspected drug dealers in Utah and Juab counties, charges against Shepherd were reduced.

Shepherd telephoned defendant at home to inform him that Shepherd would be coming to defendant's house. After completing the phone call, Shepherd suggested that the officers send him to defendant's home with a pound of marijuana. The Juab County Sheriff's office supplied Shepherd with approximately twenty-three ounces of marijuana from their evidence locker. The Sheriff's office placed a transmitter on Shepherd to record the operation.

When he arrived at defendant's home, Shepherd offered defendant the marijuana and told him that it would cost $1600. Shepherd also reminded defendant that he. already owed Shepherd $450 from a previous drug transaction. Defendant replied that he did not have any money at that time. Shepherd then offered to "front" the marijuana to the defendant.[1] Defendant accepted the marijuana from Shepherd, who immediately left.

Approximately twenty minutes later, law enforcement officers executed a search warrant at defendant's home. The officers arrested defendant after finding him in the bathroom of the home attempting to flush the marijuana down the toilet. Following a jury trial, defendant was found guilty of possession of marijuana with the intent to distribute.

## STANDARD OF REVIEW

Defendant challenges the jury's verdict of guilt. When a jury's verdict is challenged,

we must "use a high standard of review: We affirm the conviction unless reasonable minds, acting fairly on the evidence, have a reasonable doubt that [defendant] was entrapped." *State v. LeVasseur*, 854 P.2d 1022, 1024 (Utah App.1993) (citing *State v. Martinez*, 848 P.2d 702, 706 (Utah App.)), *cert. denied*, 862 P.2d 1356 (Utah 1993). Accordingly, we "review[ ] the evidence and all its reasonable inferences drawn from it in the light most favorable to the jury's verdict." *State v. Moore*, 782 P.2d 497, 501 (Utah 1989).

## ANALYSIS

Defendant first contends that the trial court erred by not concluding that, as a matter of law, defendant was entrapped. Before trial, defendant moved to dismiss the charges on grounds of entrapment. Based essentially on undisputed facts, however, the trial court ruled that reasonable minds could differ on whether or not entrapment occurred and allowed the issue of entrapment to go to the jury. *See* Utah Code Ann. § 76–2–303(5) (1990).[2]

Defendant contends that the State entrapped defendant by conducting a "reverse sting" in that the State sold, rather than purchased, the marijuana. Defendant encourages this court to adopt a per se rule of entrapment. As adopted by other jurisdictions, the entrapment per se rule basically provides that if an officer or agent provides illicit drugs, or offers illicit drugs for sale, then that conduct automatically constitutes entrapment as a matter of law. *See generally State v. Kummer*, 481 N.W.2d 437, 441 (N.D.1992).

---

1. "Fronting" is the practice of providing drugs without requiring payment at delivery. It is apparently a common practice among drug dealers because of the high cost of illicit drugs. Fronting allows the buyers to sell the drugs to others and pay for the original delivery from their resale proceeds. At trial, Shepherd testified that although he often fronted drugs, he usually did not front if the buyer owed him money from previous transactions.

2. Defendant argues that the trial court's findings in support of the ruling are not specific enough. While not a model of precision and completeness, the trial court's ruling is adequate insofar as it allowed the jury to determine whether defendant was, in fact, entrapped. *See State v. Salmon*, 612 P.2d 366, 368, 369 (Utah 1980) (finding, in pre-trial hearing, that entrapment defense did not warrant dismissal, consequently, the entrapment issue proceeded to trial). More complete findings would be required when a trial court finds that entrapment occurred.

This court has previously sanctioned reverse-sting operations in which the police provided illicit drugs for sale. In *State v. Keitz*, 856 P.2d 685 (Utah App.1993), a female undercover officer had developed a relationship with the defendant. The defendant requested that the undercover agent procure a pound of marijuana to sell to him. She agreed, and after the transaction was consummated, police arrested the defendant. This court upheld the defendant's conviction.[3] *Id.* at 691.

■ Utah has never recognized a per se rule of entrapment. Rather, the Utah entrapment statute requires an objective review of each individual situation. *See State v. Taylor*, 599 P.2d 496, 500 (Utah 1979). Utah's entrapment statute provides, in pertinent part:

> Entrapment occurs when a law enforcement officer or a person directed by or acting in cooperation with the officer induces the commission of an offense in order to obtain evidence ... by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Utah Code Ann. § 76-2-303(1) (1990). The objective standard focuses solely on the actions of the government, and not on the defendant's predisposition, to determine whether entrapment has occurred. *Taylor*, 599 P.2d at 500. In *State v. Richardson*, 843 P.2d 517 (Utah App.1992), the court succinctly summarized the principal factors that must be analyzed when entrapment is raised:

> Under the objective standard, the pivotal questions are (1) "does the conduct of the government comport with a fair and honorable administration of justice," and (2) did the governmental conduct create a substantial risk that an average person would be induced to commit the crime defendant committed? Examples of what might con-

stitute improper police conduct are "[e]xtreme pleas of desperate illness or appeals based primarily on sympathy, pity, or close personal friendship, or offers of inordinate sums of money." *Taylor* suggests certain factors to consider when evaluating the conduct between the government representative and a defendant. "[T]he transactions leading up to the offense, the interaction between the agent and the defendant, and the response to the inducements of the agent, are all to be considered in judging what the effect of the governmental agent's conduct would be on a normal person."

*Id.* at 519 (citations omitted). Entrapment cases are very fact-sensitive. We will therefore uphold the fact-finder's determination unless we can hold, based on the given facts, that reasonable minds cannot differ as to whether entrapment occurred. Only then can we hold that entrapment occurred as a matter of law.

■ In the present case, defendant claims there are several factors that constitute entrapment as a matter of law. Defendant argues that Shepherd appealed to his friendship to make the drug deal. Utah courts have held, however, that "friendship alone does not constitute entrapment." *Moore*, 782 P.2d at 501; *see also Martinez*, 848 P.2d at 707 (holding that "[t]he mere existence of a personal relationship does not establish entrapment"). To establish entrapment under this factor, defendant must demonstrate that the State's agent exploited the relationship in an appeal to defendant's sympathy or pity. *Taylor*, 599 P.2d at 498–99, 503–04 (holding that defendant's former lover played on his sympathy and pity while suffering from apparent heroin addiction withdrawals); *see also State v. Wright*, 744 P.2d 315, 319 (Utah App.1987) (holding that family relationship was not exploited and that there were "no pleas of desperation nor appeals to friendship and loyalty.") Shepherd did not exploit his friendship with defendant to induce defen-

---

3. In a slightly different context, the Utah Supreme Court upheld a reverse-sting operation in *State v. Sommers*, 569 P.2d 1110 (Utah 1977). In *Sommers*, undercover officers borrowed a television set from a merchant, took it to the defendant and told him that it was stolen. The under-

cover officer then offered to sell the television set to the defendant, who agreed to buy it. The defendant's conviction for attempt to receive stolen property was upheld by the Utah Supreme Court. *Id.* at 1112.

dant's acceptance of the marijuana. There is no evidence, for example, that Shepherd conditioned the friendship on the sale of this marijuana, or that Shepherd offered defendant a price below the marijuana's actual market value in the interest of friendship. There is, likewise, no evidence that Shepherd played on defendant's pity or sympathy to consummate the sale of the marijuana.

 Defendant also claims that by "fronting" him the marijuana, Shepherd was, in effect, offering defendant inordinate amounts of money because defendant was not required to pay for the marijuana at delivery. The record shows that although defendant stated that he did not have any money at the time of the delivery, defendant agreed to the price of the marijuana and understood that he would have to pay for the marijuana. Shepherd indicated that he expected to be paid by reminding defendant that he still owed Shepherd approximately $450 from a previous transaction in which Shepherd had fronted him marijuana. Defendant did not refuse the marijuana, nor did he dispute the amount of money that Shepherd indicated was owed by defendant. By accepting the marijuana, defendant recognized his debt to Shepherd.

Defendant makes much of the fact that Shepherd testified that it was not his usual practice to front drugs a second time unless the previous debt had been paid. The State correctly asserts that even if Shepherd departed from his usual practice, that fact alone does not compel the conclusion that defendant was induced to buy the marijuana. Indeed, the issue was properly presented to the jury, and the jury reasonably determined that defendant accepted the additional debt to receive the marijuana that Shepherd offered to him. *See State v. Salmon,* 612 P.2d 366, 368–69 (Utah 1980) (holding that trial court properly allowed factual entrapment questions to be determined by jury).

Defendant finally argues that he did not expect a delivery from Shepherd on the day in question. This fact also does not compel a conclusion that defendant was entrapped. "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." Utah Code Ann. § 76–2–303(1) (1990). It is true that defendant did not know, before the day of the delivery, when Shepherd was going to deliver the marijuana. The record shows, however, that defendant had previously informed Shepherd that he wanted more marijuana delivered to him the next time Shepherd went to California. The record also shows that Shepherd had gone to California without informing anyone, including his wife. Therefore, the jury could reasonably conclude from the evidence that the date of delivery was not crucial, and that the important fact was that defendant expected a delivery from Shepherd whenever he returned from California.

## CONCLUSION

We hold that the jury did not unreasonably determine that defendant was guilty of possession of a controlled substance with intent to distribute, and that there was no entrapment by the government. Defendant's conviction is affirmed.

WILKINS, J., concurs.

ORME, J., concurs in result.