2005 UT App 348

**STATE of Utah, Plaintiff and Appellee,**

v.

**John Vonderhaar HALTOM, Defendant and Appellant.**

**No. 20040031–CA.**

Court of Appeals of Utah.

Aug. 11, 2005.

W. Andrew McCullough, McCullough & Associates, Midvale, for Appellant.

Mark L. Shurtleff, Attorney General, and Christine F. Soltis, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 John Vonderhaar Haltom appeals his conviction for dealing in material harmful to a minor, a third degree felony, in violation of Utah Code section 76–10–1206 (2000). We affirm.

## BACKGROUND

¶ 2 On August 4, 2000, just a few days after Dr. John's Lingerie and Novelty store (Dr. John's) opened for business, police in Midvale, Utah, sent BP, a seventeen-year-old girl, into the store to attempt to buy an adult film. She entered the store and was soon thereafter approached by Vadim Saprgeuldiev (Vadim), who asked to see her identification. BP gave Vadim, who was an employee of Dr. John's but not actually on duty when BP entered, her driver license. He glanced at it and then gave it back and permitted her to shop. After wandering around the store for a few minutes, BP went to the adult video rack where she chose one at random and then went to the counter to make the purchase. As she shopped, Vadim called Haltom, a part owner of Dr. John's, to the counter and asked him how one could determine whether a license was authentic. Haltom informed Vadim that if BP attempted to purchase an adult video, he would show him.

As BP approached the counter, Haltom asked her for her identification and she again produced her driver license.

¶ 3 Haltom took the license and examined it. Among the relevant information contained on the license were BP's photo, name, address, social security number, and her date of birth, which clearly showed that BP was born in December 1982 and was therefore just seventeen years old at the time. Haltom carefully compared BP to the photo and then asked her to recite her social security number—printed next to her date of birth—and her address. When she gave an address with a street name rather than coordinates, Haltom became concerned and asked her to clarify her answer. She responded with the proper coordinate address, which corresponded with the address on the license, and Haltom handed back the license. Vadim then asked Haltom if he could sell the video to BP and Haltom answered "What's the problem? It's her I.D. [and] she's eighteen, right?" Vadim completed the sale as Haltom was talking with BP and she left the store.

¶ 4 Soon thereafter, BP returned to the store with Detective Brimley, the Midvale City Police officer who had sent her into Dr. John's. Brimley informed Haltom that he had sold an adult video to a minor—BP—and BP identified Vadim and Haltom as the people she had dealt with during the transaction. Haltom was arrested for dealing with material harmful to a minor, in violation of Utah Code section 76–10–1206 (2000).

¶ 5 Prior to trial, Haltom petitioned to have the charges dismissed because, he argued, he had been entrapped as a matter of law. The State responded and a hearing was scheduled, during which Haltom presented just one witness—Curtis Gorman, a former employee who had been fired for stealing from Haltom and who had been referred to the Midvale Police Department by Haltom for that theft. Haltom argued that Brimley had established a relationship with Vadim, and that Brimley had used Vadim as a police agent to induce Haltom to sell the video to BP. Through Gorman's testimony, Haltom introduced evidence that Brimley was interested in subverting a Dr. John's employee, and that, at Brimley's urging, Gorman had

talked with Vadim about meeting with Brimley. But, Gorman never again met with Brimley and he had no idea whether Brimley had been able to talk with Vadim, or if, assuming such an encounter occurred, Vadim had agreed to work with Brimley. Consequently, the trial court denied Haltom's motion, but informed all parties that Haltom would be given the opportunity to present his entrapment claim to the jury as a factual defense to the charge.

¶ 6 The case was subsequently tried in front of a jury, which convicted Haltom. Haltom filed a post-trial motion to arrest the judgment, which the trial court denied, and he was sentenced to a statutory term of imprisonment of zero to five years in prison. The trial court, however, suspended all but thirty days of that time and placed Haltom on probation. Haltom now appeals.

## ISSUES AND STANDARD OF REVIEW [1]

■ ¶ 7 Haltom argues that the trial court erred in concluding that he had not been entrapped as a matter of law. The trial court's decision presents a mixed question of fact and law. *See State v. Beddoes,* 890 P.2d 1, 3 (Utah Ct.App.1995). Although we review factual findings for clear error and legal conclusions for correctness, due to the factually sensitive nature of entrapment cases we will affirm the trial court's decision "unless we can hold, based on the given facts, that reasonable minds cannot differ as to whether entrapment occurred." *Id.* Only when reasonable minds could not differ can we find entrapment as a matter of law. *See id.*

■ ¶ 8 Haltom next argues that the trial court erred in concluding that certain testimony was inadmissible hearsay. "Whether a statement is offered for the truth of the matter asserted is a question of law, which we review under a correction of error standard." *State v. Perez,* 924 P.2d 1, 2–3 (Utah Ct.App.1996).

■ ¶ 9 Haltom also argues that the trial court's decision on the relevance of certain statutory changes to the format of minors' driver licenses was incorrect. "While relevant evidence is generally admissible, a trial court has broad discretion to determine whether proffered evidence is relevant, and we will find error ... only if the trial court has abused its discretion." *State v. Harrison,* 805 P.2d 769, 780 (Utah Ct.App.1991) (citation omitted).

■ ¶ 10 Finally, Haltom argues that the evidence was insufficient to support his conviction both as a matter of law and of fact. Haltom's argument falls into two categories. First, he asserts that his activities did not constitute a violation of section 76–10–1206 as a matter of law, which under these circumstances presents a question of statutory interpretation that we review for correctness. *See State v. Bluff,* 2002 UT 66, ¶ 37, 52 P.3d 1210. Second, he asserts that the evidence was not sufficient to support the jury's verdict. "[W]hen reviewing a claim of insufficiency of the evidence, the evidence and all reasonable inferences that may be drawn therefrom are viewed in the light most favorable to the jury verdict." *State v. Warden,* 813 P.2d 1146, 1150 (Utah 1991).

---

1. Although on appeal Haltom argues that his due process rights were violated when Brimley erased the audio tape made during his interview with Gorman, he failed to preserve this argument below. *See State v. Dean,* 2004 UT 63, ¶ 13, 95 P.3d 276 (stating "appellate courts will not consider an issue, including constitutional arguments, raised for the first time on appeal unless the trial court committed plain error or the case involves exceptional circumstances"); *see also State v. Irwin,* 924 P.2d 5, 7–8 (Utah Ct.App. 1996). Had Haltom preserved this issue "[t]he materiality required to reverse a criminal conviction for ... destruction of evidence as a denial of due process is more than evidentiary materiality." *State v. Nebeker,* 657 P.2d 1359, 1363 (Utah 1983). "The evidence must be material in a constitutional sense." *State v. Humphrey,* 793 P.2d 918, 926 (Utah Ct.App.1990). To meet this threshold, Haltom must show that the " 'evidence is vital to the issues of whether [he] is guilty of the charge *and* whether there is a fundamental unfairness that requires the Court to set aside [his] conviction.' " *Id.* (quoting *State v. Lovato,* 702 P.2d 101, 106 (Utah 1985)). Haltom does not meaningfully assert that anything on the destroyed tape satisfies this burden, and in fact, Gorman's version of the taped interview largely agreed with Brimley's version. Thus, it is questionable whether Haltom would have been able to demonstrate harm resulting from the destruction of the tape. Nevertheless, because he failed to preserve this issue in the trial court, we will not address the substance of the argument here.

## ANALYSIS

■ ¶ 11 Haltom first argues that the trial court erred in failing to dismiss the complaint because he was entrapped as a matter of law. "Utah has never recognized a per se rule of entrapment." *State v. Beddoes*, 890 P.2d 1, 3 (Utah Ct.App.1995). Instead, Utah has adopted an objective standard through which all entrapment claims will be examined, with the focus on whether the police conduct created "a substantial risk that a normal law-abiding person would be induced to commit a crime." *State v. Martinez*, 848 P.2d 702, 706 (Utah Ct.App.1993); *see also State v. Taylor*, 599 P.2d 496, 500 (Utah 1979) (stating that the objective view asks whether "the conduct of the government comport[s] with a fair and honorable administration of justice"). Under an objective standard, law enforcement officials are not denied the use of decoys. *See Taylor*, 599 P.2d at 500. Nor are police prohibited from using people that a defendant might consider to be a friend. *See Martinez*, 848 P.2d at 707 (stating "the mere existence of a personal relationship does not establish entrapment"). Instead, the focus of our objective test is on examining whether the government conduct created or manufactured a crime. *See Taylor*, 599 P.2d at 500–01 ("Nothing can be more reprehensible than to induce the commission of crime for the purpose of apprehending and convicting the perpetrator." (quotations and citation omitted)). Consequently, to determine whether an entrapment has occurred fact finders are required to examine whether law officers, or their agents, induced "the commission of an offense in order to obtain evidence ... by methods creating a substantial risk that the offense would be committed by one not otherwise ready to commit it." *Beddoes*, 890 P.2d at 3 (alteration in original) (quotations and citations omitted).

■ ¶ 12 Haltom argues that he would not have sold an adult video to a minor in the absence of Vadim's alleged relationship with Brimley. However, at best, the evidence Haltom offered in support of this assertion is subject to multiple interpretations, ranging from the one offered by Haltom—that Vadim became an agent of the State—to the one offered by the State—that Vadim did nothing to assist Brimley's crusade against Dr. John's. Moreover, had the evidence of Vadim's relationship with the State been less tenuous, this alone is still insufficient to establish entrapment as a matter of law. *See id.* (noting that exploitation of a relationship is a necessary factor to meet the requirements of entrapment). This is especially true given Haltom's decision to ask BP for her identification and examine it. Once he did this, there is no evidence that Vadim attempted to coerce or convince Haltom to ignore her date of birth, or that Vadim told Haltom that he had already checked the birthdate and that there was no need to do so again. Rather than an issue that could be settled as a matter of law, Haltom presented the trial court with evidence that could have supported Haltom's entrapment defense, but that also could have been interpreted as insignificant. Consequently, because reasonable minds easily could differ on the question of entrapment as a matter of law in this case, the trial court properly denied Haltom's motion.[2] *See id.*

■ ¶ 13 Haltom next argues that the trial court erred in suppressing a portion of Theresa Ferrone's testimony as inadmissible hearsay. Rule 801(c) of the Utah Rules of Evidence defines hearsay as "a statement, other than one made by the declarant ..., offered in evidence to prove the truth of the matter asserted." Utah R. Evid. 801(c). "'[I]f an out-of-court statement is "offered simply to prove that it was made, without regard to whether it was true, such testimony is not proscribed by the hearsay rule."'" *In re G.Y.*, 962 P.2d 78, 84 (Utah Ct.App. 1998) (quoting *State v. Olsen*, 860 P.2d 332, 335 (Utah 1993)). "To the extent that there is no factual dispute, whether a statement is offered for the truth of the matter asserted is a question of law, which we review under a correction of error standard." *Id.* (quotations, citation, and alteration omitted).

---

2. Haltom presents no challenge to the jury's refusal to accept his entrapment defense as a matter of fact.

¶ 14 Haltom argues that the trial court erred in concluding that he was offering Ferrone's testimony concerning a conversation with Vadim for the truth of the matter asserted. Specifically, Haltom suggests that Ferrone's testimony was offered to bolster Haltom's claim that Vadim was an expert in the store's policies and accepted methods for identifying and excluding minors from the premises. Assuming that Haltom's version of the testimony is correct, we do not believe that the statements were offered for the truth of the matter asserted.[3] In fact, the excluded statement would have done nothing more than support Haltom's claim that Vadim was the store trainer and that he was quite aware of the store policy concerning the admission of minors.

¶ 15 However, the trial court's erroneous exclusion of Vadim's statements does not necessarily require the reversal of Haltom's conviction. " '[W]e do not upset the verdict of a jury merely because some error or irregularity may have occurred, but will do so only if it is something substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different result.' " *State v. Hutchison,* 655 P.2d 635, 636 (Utah 1982) (quoting *State v. Urias,* 609 P.2d 1326, 1329 (Utah 1980)). "Where evidence is excluded by the trial court and the substance of such evidence is later admitted through some other means, any error which may have resulted is cured." *State v. Colwell,* 2000 UT 8, ¶ 29, 994 P.2d 177. Here, although the trial court disallowed Haltom's attempt to use Vadim's own words to support Haltom's assertion that Vadim knew the store policy well enough to train others, Haltom was able to present other evidence of Vadim's role as Dr. John's trainer. For instance, Haltom's longtime employee Bonnie Bolton testified that she was trained by Vadim on how to "card" potential patrons to ensure that they were not minors. During Haltom's testimony, he identified Vadim as "a senior employee," one sufficiently experienced to appear in the background of a Dr. John's promotional video carding potential customers. He further testified that he brought Vadim in from Nebraska to train the Utah employees and that Vadim was a trusted employee. Thus, although the jury was not presented with Vadim's statements, ample evidence of Vadim's knowledge was presented to the jury through other avenues. Thus, even though the trial court erred in suppressing the statement, the error was not harmful. *See, e.g., State v. Blubaugh,* 904 P.2d 688, 697–98 (Utah Ct. App.1995) (concluding that trial court's error was harmless because sufficient similar evidence was presented to the jury to render the error harmless).

¶ 16 Haltom also argues that the trial court erred in denying his attempt to introduce subsequent legislative changes to the format of driver licenses for minors. "While relevant evidence is generally admissible, a trial court has broad discretion to determine whether proffered evidence is relevant, and we will find error in a relevancy ruling only if the trial court has abused its discretion." *State v. Harrison,* 805 P.2d 769, 780 (Utah Ct.App.1991) (citation omitted). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R. Evid. 401; *see also Colwell,* 2000 UT 8 at ¶ 27, 994 P.2d 177.

¶ 17 The trial court in this instance did not exceed the permitted range of its discretion. Haltom's defense was never predicated on a claim that he was unfamiliar with the format of Utah's driver licenses, or that he was confused by BP's identification in particular. Instead, his defense centered entirely upon his reliance on Dr. John's policy of precluding minors from the premises, his expectation that his employees would not fail in enforcing the policy, and his claim that the Midvale police used Vadim to entrap Haltom. The subsequent legislative changes to the

---

3. During her direct examination, Ferrone was asked if Vadim had provided her with any instruction or training in addition to that provided by Haltom. She responded "Vadim just told me, you know, you need to check every I.D ...." at which point the State objected. The court sustained the objection. The State offered no reason for its objection, but the court informed Haltom that "[a]ny hearsay is off."

driver license format were irrelevant to the defenses offered by Haltom, and therefore we conclude that the trial court acted well within its permitted range of discretion in refusing to allow Haltom to introduce evidence of the changes.

¶ 18 Haltom's final and most forceful argument is that the evidence was insufficient as a matter of law to convict him of dealing in materials harmful to a minor. More concisely, Haltom asserts that the State failed to prove that he violated the statute when he sold the video to BP. To address Haltom's challenge properly, we must first determine the culpable mental state required to violate section 76–10–1206. Only after doing so can we examine the merits of his argument.

◼◼◼ ¶ 19 Section 76–10–1206 states:

A person is guilty of dealing in material harmful to minors when, knowing that a person is a minor, or *having failed to exercise reasonable care in ascertaining the proper age of a minor,* he:

> (a) intentionally distributes or offers to distribute; exhibits or offers to exhibit to a minor any material harmful to minors.

Utah Code Ann. § 76–10–1206(1) (2003) (emphasis added). "When interpreting statutes, our primary goal is to evince the true intent and purpose of the Legislature." *State v. Martinez,* 2002 UT 80, ¶ 8, 52 P.3d 1276 (quotations and citations omitted). "To discover that intent, we look first to the plain language of the statute." *State v. Bluff,* 2002 UT 66, ¶ 34, 52 P.3d 1210 (quotations and citation omitted). "When examining the statutory language we assume the legislature used each term advisedly and in accordance with its ordinary meaning." *Martinez,* 2002 UT 80 at ¶ 8, 52 P.3d 1276. "[T]hus, the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Bluff,* 2002 UT 66 at ¶ 34, 52 P.3d 1210 (quotations and citation omitted). "Furthermore, we 'avoid interpretations that will render portions of a statute superfluous

or inoperative.'" *Martinez,* 2002 UT 80 at ¶ 8 (quoting *Hall v. State Dep't of Corr.,* 2001 UT 34, ¶ 15, 24 P.3d 958).

◼◼◼ ¶ 20 At issue in the instant case is the meaning of the phrase "having failed to exercise *reasonable care* in ascertaining the proper age." Utah Code Ann. § 76–10–1206(1) (emphasis added).[4] "Reasonable care" is defined as "[t]hat degree of care which a person of ordinary prudence would exercise in the same or similar circumstances, [and f]ailure to exercise such care is *ordinary negligence.*" Black's Law Dictionary 1265 (6th ed.1990). Haltom has presented us with no reason to believe that the legislature intended a different meaning, or with any case law that would support his position in the face of this language. *Compare State v. Hamblin,* 676 P.2d 376, 378–79 (Utah 1983) (concluding that the legislature's use of the term "negligence" warranted a conclusion that the elements of automobile homicide were met if the state could show that the defendant had been simply negligence, and not criminally negligent), *with State v. Larsen,* 2000 UT App 106, ¶ 17–18, 999 P.2d 1252 (noting that the legislature intended criminal negligence to be the applicable mens rea for negligent homicide when it used the term "criminal negligence" in the statute). Although section 76–12–1206 uses neither of the terms "simple negligence" or "ordinary negligence," it does contain the phrase "reasonable care." "Reasonable care" carries with it a commonly accepted definition, and thus, we are bound by its meaning. Consequently, we conclude that a person violates section 76–10–1206 if they act with simple or ordinary negligence in failing to discover that the recipient of "harmful material" is a minor, prior to providing the material.

◼◼◼ ¶ 21 Having determined the simple negligence is sufficient to violate section 76–10–1206, we turn our attention to examining whether the evidence here was sufficient

---

4. The statute also creates liability for selling "harmful material" to someone the seller knows to be a minor. *See* Utah Code Ann. § 76–10–1206(1) (2003). However, Haltom is not, and has never been, accused of actually knowing that

BP was a minor at the time of the sale. Accordingly, we limit our analysis to Haltom's failure to determine BP's age and whether that failure violated the statute.

to support Haltom's conviction.[5] "In making the determination as to whether there is sufficient evidence to uphold a conviction, an appellate court does not sit as a second fact finder." *State v. Warden,* 813 P.2d 1146, 1150 (Utah 1991). "[W]hen reviewing a claim of insufficiency of the evidence, the evidence and all inferences that may be drawn therefrom are viewed in the light most favorable to the jury verdict." *Id.*

¶ 22 The jury was presented with evidence that BP entered Dr. John's, that she selected an adult video, and that she took it to the counter. There, Haltom asked her for her identification after Vadim called him over and asked him to demonstrate how to confirm the authenticity of a person's identification. BP gave Haltom her driver license, and Haltom compared the picture on the license to BP. Satisfied that the picture was indeed of BP, he asked her to confirm virtually every piece of material information on the license, including her address and social security number, but oddly not her date of birth. BP answered all of his questions, but Haltom became suspicious when the address she provided did not match the street address on the license. However, when questioned further, she provided an equivalent coordinate address that was identical to the one on the license. Satisfied that the identification was hers, Haltom instructed Vadim to sell BP the video.

¶ 23 Examining all of these facts, and the inferences that can be drawn from them, in a light most favorable to the jury's verdict, we conclude that, as a factual matter, the evidence was sufficient. Haltom held the license and examined it to ensure that it was authentic. He read every line material to ensuring the authenticity except the date of birth. Thus we cannot say that the jury's

decision that Haltom's behavior did not constitute "reasonable care" is unsupported.

¶ 24 Haltom responds that the defense he presented eliminated any possible negligence finding as a matter of law. We disagree. At trial Haltom argued that it was, and is, Dr. John's policy to exclude from the store everyone under the age of eighteen. Under the policy, every patron's identification was checked at the door, so he argues that it was reasonable for him to assume that she was over eighteen when she reached the counter. The State countered that in the few days that the store was operating in Midvale before Haltom's arrest, the officer who eventually arrested Haltom had twice entered the store without being subjected to the "mandatory" identification check. The State also pointed to BP's presence in the store as evidence that Dr. John's policy was at best sporadically enforced. Thus, the jury was presented with conflicting information concerning Dr. John's policy, and it was left to determine whether the policy alone amounted to "[t]hat degree of care which a person of ordinary prudence would exercise in the same or similar circumstances." Black's Law Dictionary 1265 (6th ed.1990).

¶ 25 Even accepting Haltom's argument that a policy could be used to immunize him from prosecution—which is a position we do not necessarily accept—the evidence concerning the application of this policy was conflicting. Consequently, it was the role of the jury to determine whether the policy, and Haltom's claimed reliance upon it, amounted to the reasonable care required by section 76–10–1206. *Cf. Little Am. Ref. Co. v. Leyba,* 641 P.2d 112, 114 (Utah 1982) ("The jury is entrusted to resolve all relevant questions of fact presented to the court. The questions of fact include findings of negligence[.]"). The jury determined that Haltom had been

---

5. Although Haltom's conviction was based on the jury's finding that he was reckless when he sold the video, this error is not fatal to his conviction. *See State v. Perez,* 924 P.2d 1, 3 (Utah Ct.App. 1996) ("[W]e may not interfere with a jury verdict unless upon review of the entire record, there emerges error of sufficient gravity to indicate that a defendant's rights were prejudiced in a substantial manner." (quotations and citation omitted)). The trial court's instruction forced the State to meet a higher mens rea standard than required under the statute, and because the principles underlying "simple negligence" are incorporated within the definition of recklessness, the jury must have, by necessity, found Haltom also to be negligent when they determined that he had been reckless. *Cf.* Utah Code Ann. § 76–2–104 (2003). Therefore, although the trial court erred in instructing the jury, the error could not have prejudiced Haltom and was thus harmless.

reckless, and by implication that he had violated section 76–10–1206's duty of reasonable care, when he sold the video to BP. Consequently, we conclude that Haltom's conviction was supported by sufficient evidence.

## CONCLUSION

¶ 26 The trial court properly denied Haltom's motion to dismiss the charges because Haltom failed to show that he had been entrapped as a matter of law. The court erred in denying Haltom the opportunity to introduce testimony concerning Vadim's out of court statements, but Haltom was given the opportunity to present evidence to the jury that was sufficiently similar to the excluded testimony rendering the trial court's error harmless. Finally, a showing of simple negligence is sufficient to support a conviction under section 76–10–1206's expectation of "reasonable care." The jury found that Haltom failed to use reasonable care in selling an adult video to BP and the evidence supports its verdict.

¶ 27 Accordingly, we affirm Haltom's conviction.

¶ 28 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.